1  Terrence J. Coleman    (State Bar No. 172183)
   Brian H. Kim          (State Bar No. 215492)
2  PILLSBURY & LEVINSON, LLP
   The Transamerica Pyramid
3  600 Montgomery Street, 31st Floor
   San Francisco, California 94111
4  Telephone: (415) 433-8000
   Facsimile: (415) 433-4816
5  E-mail:  tcoleman@pillsburylevinson.com, bkim@pillsburylevinson.com

6
   Attorneys for Plaintiff,
7  ELIZABETH E. EDWARDS

8

9                UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12 ELIZABETH E. EDWARDS,            )  Case No.  3:07-CV-5807 (VRW)
                                    )
13              Plaintiff,          )  **PLAINTIFF ELIZABETH E.**
                                    )  **EDWARDS' OPPPOSITION TO**
14 v.                               )  **DEFENDANTS' MOTION TO**
                                    )  **DISMISS**
15 THE PRUDENTIAL INSURANCE         )
   COMPANY OF AMERICA; THE H.F.     )  Date:    January 3, 2008
16 AHMANSON & COMPANY LONG          )  Time:    2:30 p.m.
   TERM DISABILITY PLAN; and DOES 1 )  Dept.:   Courtroom 6, 17th Floor
17 through 20, inclusive,           )  Judge:   Hon. Vaughn R. Walker
                                    )
18              Defendants.         )
                                    )
19 ─────────────────────────────────)

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................... 4

III.  ARGUMENT ............................................................................................. 6

    A.    Edwards' Breach of Fiduciary Duty Claim Under
        ERISA §§502(a)(2) and 409 Is Permissible ........................................ 6

    B.    Plaintiff's Claim Under ERISA § 502(a)(3) Is Permissible ............... 10

        1.    There is No Bar to Bringing Both ERISA §§ 502(a)(3)
            and 502(a)(1)(B) Claims In the Same Action When
            ERISA § 502(a)(1)(B) Cannot Provide Complete Relief. ........ 11

        2.    The United States Solicitor General and Department of
            Labor Agree That "Make-Whole" Monetary Relief Is
            Available Under 502(a)(3) ...................................................... 13

    C.    Edwards' Claim Under ERISA § 104(b)(4) Is Permissible ............... 15

    D.    Edwards Is Entitled to a Jury Trial For Her Claim For Benefits
        Under the Prudential Policy ............................................................... 18

IV.   CONCLUSION ........................................................................................ 20

i

1

## TABLE OF AUTHORITIES

2

<u>CASES</u>

3

4

*Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004) ............................................................. 3

5

*Beck v. Levering*, 947 F.2d 639, 641 (2nd Cir. 1991) ................................................ 9-10

6

*Brock v. Robbins*, 830 F.2d 640 (7th Cir. 1987) ............................................................. 9

7

*Cicio v. Does*, 321 F.3d 83 (C.A.2 2003) ....................................................................... 14

8

*Credit Managers Ass'n v. Kennesaw Life & Acc. Ins. Co.*
9

809 F.2d 617, 625 (9th Cir.1987) .................................................................................... 7

10

*Cyr v. Reliance Standard Life Ins. Co.*
___ F.Supp.2d ___, 2007 WL 4246049, at * 8 (C.D. Cal. 2007) .............................. 17

11

*DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 453 (3rd Cir. 2003) ........................ 14

12

*Donovan v. Mazzola*, 716 F.2d 1226, 1236-39 (9th Cir. 1984) .................................. 8-9

13

*Eaves v. Penn*, 426 F.Supp. 830 (W.D. Okla. 1976) ...................................................... 9

14

*Ehrman v. Standard Ins. Co.*, 2007 WL 1288465, at *4 (N.D. Cal. 2007) .............. 11-12

15

16

*Erreca v. West States Life Ins. Co.*, 19 Cal.2d 388, 394-95 (1942) ................................ 6

17

*Everhart v. Allmerica Fin. Life Ins. Co.*, 275 F.3d 751, 755-56 (9th Cir. 2001) .......... 5,16

18

*Fechter v. HMW Indus., Inc.*, 879 F.2d 1111 (3rd Cir. 1989) .................................... 10

19

*Finkelstein v. The Guardian Life Ins. Co. of America*
20

2007 WL 4287329, at *4 (N.D. Cal. 2007) ................................................................. 11

21

*Forsythe v. Humana*, 114 F.3d 1467, 1475 (9th Cir. 1997) ...................................... 11,16

22

*Great-West Life & Annuity Ins. Co. v. Knudson*
534 U.S. 204, 210, 217 (2002) ............................................................................ 13-15,18

23

24

*Hangarter v. Provident Life & Accident Ins. Co.*
373 F.3d 998, 1006-07 (9th Cir. 2004) ............................................................................ 6

25

*Katsaros v. Cody*, 744 F.2d 270, 281-83 (2nd Cir. 1984) ............................................ 9

26

*Korotynska v. Met. Life Ins. Co.* 474 F.3d 101 (4th Cir. 2006) .................................. 11

27

*Kyle R.R. v. Pacific Admin. Serv.*, 990 F.2d 513, 517-18 (9th Cir.1993) ...................... 7

28

*Leung v. Skidmore, Ownings & Merrill LLP*
213 F.Supp.2d 1097 (N.D.Cal. 2002) ........................................................ 17

*Marshall v. Snyder*, 572 F.2d 894, 901 (2nd Cir. 1978) .................................... 9

*Martin v. Feilen*, 965 F.2d 660, 672-73 (8th Cir. 1992) .................................. 10

*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985) ........................ 10

*McLeod v. Oregon Lithoprint, Inc.*, 102 F.3d 376, 377-78 (9th Cir. 1996) .................. 11

*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) .......................................... 13

*Moody v. Liberty Life Assur. Co.*, 2007 WL 1174828, at *4 (N.D. Cal. 2007) ............. 17

*Moore v. American United Life Ins. Co.*, 150 Cal.App.3d 610, 630 (1984) .................. 6

*Pacificare, Inc. v. Martin*, 34 F.3d 834 (9th Cir. 1994) .................................... 7

*Schwartz v. Interfaith Med. Ctr.*, 715 F.Supp. 1190 (E.D.N.Y. 1989) .......................... 9

*Spinelli v. Gaughn*, 12 F.3d 853, 855 (9th Cir. 1993) .................................... 19

*Unum Life Ins. Co. of Am. v. Ward*, 526 U.S. 538 (1999) .................................... 6

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) .......................................... 2,10-11

*Vytra Healthcare v. Cicio*, No. 03-69, 72 USLW 3093 (2003) ........................ 15

*Wal-Mart Stores, Inc. v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000) .......................... 19

## STATUTES

29 C.F.R. § 2660.503-1(j) ........................................................ 16-18

29 C.F.R. § 2660.503-1(m) ........................................................ 18

29 C.F.R. § 2660.503-1(m)(8) ........................................................ 16

29 U.S.C. § 1001 ........................................................ 1

29 U.S.C. § 1024(b)(4) ........................................................ 1,6

29 U.S.C. § 1104(a)(1) ........................................................ 6

29 U.S.C. § 1109 ........................................................ 1

29 U.S.C § 1109(a) ........................................................ 7

29 U.S.C. § 1132(a)(1)(B) ........................................................................1-2

29 U.S.C. § 1132(a)(2) ...........................................................................1,7-8

29 U.S.C. § 1132(a)(3) ..........................................................................1,7,10

29 U.S.C. § 1132(c)(1)(B) ........................................................................15

ERISA § 104(b)(4) ..............................................................................1,6,15

ERISA § 404(a)(1) .....................................................................................6

ERISA § 409...............................................................................................1

ERISA § 409(a) .........................................................................................7

ERISA § 502(a) .........................................................................................8

ERISA § 502(a)(1)(B) .............................................................1-5,11-14,17-19

ERISA § 502(a)(2) ..........................................................................1-2,5,10

ERISA § 502(a)(3) ......................................................1-3,7,10-15,18-19

ERISA §502(c)(1) ......................................................................................3

ERISA § 502(c)(1)(B) ................................................................................15

## OTHER

Langbein, *What ERISA Means by "Equitable": The Supreme Court's Trail of Error in Russell, Mertens, and Great-West*, 103 Colum. L.Rev. 1317, 1365 (2003) ............ 15

Restatement (Second) of the Law of Trusts, §§ 2 cmts. e and f, 197 (1959) ........... 13

## I.    INTRODUCTION

In this disability insurance action governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., Plaintiff Elizabeth E. Edwards has brought claims under ERISA for the following four types of relief:

(1)    for the recovery of disability benefits that have been wrongfully withheld from her by Defendants The Prudential Insurance Company of America, ("Prudential") and The H.F. Ahmanson & Company Long Term Disability Plan (the "Plan"), pursuant to ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B);

(2)    for appropriate equitable and injunctive relief, including but not limited to removing Prudential as a fiduciary of the Plan and/or prohibiting Prudential from performing various acts in administering claims under the Plan, pursuant to ERISA §§ 502(a)(2) and 502 a)(3), codified at 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3);

(3)    for equitable "make-whole" monetary relief, pursuant to ERISA § 502(a)(3); and

(4)    for statutory penalties for Prudential's failure to produce documents upon Plaintiff's request, pursuant to ERISA §§ 104(b)(4) and 409, codified at 29 U.S.C. §§ 1024(b)(4) and 1109.

Apart from making the completely irrelevant argument regarding ERISA preemption[1], Defendants' Motion to Dismiss all but Plaintiff's first claim for relief is based upon a selective reading of her Complaint and ignores the well-established authorities under ERISA expressly permitting these additional claims.  Defendants argue:  (1) Plaintiff's claims under ERISA §§ 502(a)(2) and 502 (a)(3) fail because of

---

[1] The bulk of Defendants' Motion to Dismiss focuses on whether ERISA preempts Edwards' claims.  See Defendants' Memorandum of Points and Authorities ("Defendants' MPA"), pp. 6-7.  This argument is irrelevant because Edwards alleged all of her claims as ERISA claims.  See Request for Judicial Notice ("Req. Jud. Not."), Exh. A, ¶¶ 15-21, 22-28, 29-33, 38.

1

1  Plaintiff purportedly has an adequate legal remedy under ERISA § 502(a)(1)(B), 29

2  U.S.C. § 1132(a)(1)(B) for past benefits; (2) Prudential cannot be liable for failure to

3  produce documents because it is not the "designated" plan administrator of the

4  Plan; and (3) Plaintiff's jury trial demand should be dismissed because jury trials are

5  not available in ERISA cases.

6       As Plaintiff sets forth in her Motion to Remand, set for hearing on the

7  same day as the present motion, this Court lacks removal jurisdiction, and

8  Defendants' motion should therefore be denied as moot. Nevertheless,

9  Defendants' arguments fail for the following additional reasons. First, Plaintiff's

10  breach of fiduciary duty claim under ERISA § 502(a)(2) against Prudential is

11  valid because it is clear that she brings such claims on behalf of the Plan as a

12  whole, i.e., all Plan participants, and not just herself. Moreover, it is clear that

13  Plaintiff seeks appropriate Plan-wide injunctive relief against Prudential beyond

14  her individual recovery of benefits, which may appropriately include the

15  removal of Prudential as a fiduciary on behalf of the Plan and/or an injunction

16  requiring Prudential to apply the California definition of total disability. Courts

17  have repeatedly held that the removal of a fiduciary and other injunctive

18  remedies are appropriate equitable remedies on behalf of an ERISA plan under

19  ERISA § 502(a)(2).

20       Second, even if the remedies Plaintiff seeks for breaches of fiduciary duty

21  amount to individualized relief, she may pursue these additional remedies

22  pursuant to ERISA §502(a)(3). The Supreme Court in *Varity Corp. v. Howe*, 516

23  U.S. 489 (1996) held ERISA § 502(a)(3) could provide individual equitable relief

24  where relief under § 502(a)(1)(B) is inadequate. It is not enough that Plaintiff

25  simply be awarded her past benefits and put back on claim with Prudential

26  continuing as the claims fiduciary free to do the same thing to her and other Plan

27

28

2

1    participants all over again. Either Prudential should be removed as fiduciary or

2    an appropriate permanent injunction should be entered against it.

3         Moreover, the United States Solicitor General and the Department of

4    Labor agree that "make-whole" monetary relief is available under ERISA §

5    502(a)(3) as "other appropriate equitable relief". Such monetary relief designed

6    to place the Plaintiff in the positions she was in before the breach was relief

7    typically available in equity. *See* Req. Jud. Not., Exh. C (*Brief of United States as*

8    *Amicus Curia in Favor of Petitioner*, filed December 2003 in *Aetna Health Inc. v.*

9    *Davila*, 542 U.S. 200 (2004)), p. 27 fn. 13.

10         Third, Plaintiff's claim for statutory penalties against Prudential under ERISA

11    §502(c)(1) should not be dismissed because Plaintiff alleged that Prudential served

12    as the co-plan administrator for the plan. Defendants' contention that Prudential

13    was not the "designated" plan administrator in the Plan documents is not

14    dispositive proof that Plaintiff's claim fails as a matter of law. ERISA §502(c)(1)

15    requires "any" administrator to provide documents in response to a claimant's

16    request, and the Department of Labor's regulations effective January 1, 2002 require

17    the production of information solely in the custody and control of Prudential.

18    Courts have recognized that insurers do serve as "de facto" plan administrators

19    when they have actual control over plan administration. Given the Complaint's

20    allegations that Prudential acted as a co-plan administrator, whether Prudential

21    served as a "de facto" plan administrator remains a factual issue.

22         Finally, Defendants rely upon old cases for the proposition that jury trials

23    are never allowed in ERISA cases. In fact, recent Supreme Court authority has

24    clarified that Plaintiff's claim for the recovery of her withheld disability benefits

25    under ERISA §502(a)(1)(B) is a *legal* claim for money damages. Accordingly,

26    Plaintiff has a constitutional right to a jury trial as to her first cause of action for

27    benefits due.

28

1       For the foregoing reasons, Plaintiff respectfully requests that the Court

2   dismiss Defendants' motion to dismiss in its entirety.

3   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

4       Edwards was employed as a loan consultant for The H.F. Ahmanson &

5   Company and was enrolled in the Plan, which was insured by Prudential. While

6   still enrolled in the Plan in 1998, she became disabled as a result of multiple

7   conditions, including lumbar disc herniations requiring multiple fusion surgeries

8   and hardware installation, nerve damage, and severe pain and weakness.

9       Edwards accordingly submitted her claim for benefits to Prudential, which

10  paid her monthly disability benefits for an extended period of time. In 1998, while

11  Edwards was on claim, the "designated" plan administrator The H.F. Ahmanson &

12  Company merged with and became part of Washington Mutual, yet there is no

13  indication Washington Mutual was designated as the plan administrator . *See* Req.

14  Jud. Not., Exh. B (SEC 8-K filing for The H.F. Ahmanson & Company). Thus, at all

15  times, Prudential and not Washington Mutual acted as the actual plan

16  administrator.

17      On or around July 25, 2006, Prudential wrongfully terminated benefits

18  without conducting a reasonable or thorough investigation and without any

19  evidence that her conditions had improved to allow her to return to gainful

20  employment. Edwards timely appealed Prudential's denial of benefits and

21  provided additional evidence to confirm her continuing and permanent disability.

22  However, Prudential failed to make a determination of her appeal within the time

23  deadlines set forth in the Plan and applicable regulations. Instead, it waited until

24  September 6, 2007 to send a letter purporting to deny Edwards' appeal.

25      On October 11, 2007, Edwards filed her Complaint in San Francisco Superior

26  Court against Prudential and the Plan, stating four causes of action under ERISA.

27  The First Cause of Action is identified as a cause of action for recovery of benefits

28

4

1   under ERISA § 502(a)(1)(B).  Pursuant to the Ninth Circuit's opinion in *Everhart v.*

2   *Allmerica Fin. Life Ins. Co.*, 275 F.3d 751 (9th Cir. 2001), even though Prudential is the

3   entity contractually obligated to pay benefits and that denied Plaintiff's claim, the

4   Plan as an entity is included as a party defendant.  Defendants do not seek dismissal

5   of this cause of action.

6        The Second Cause of Action is identified as an action for "Breach of

7   Fiduciary Duty" under ERISA § 502(a)(2).  It alleges Prudential's "exercise of

8   authority over the management of the Plan, disposition of Plan assets, and

9   administration of the Plan." Req. Jud. Not., Exh. A, ¶ 23.  Plaintiff alleges a

10  breach against "Prudential as an individual Plan participant *and on behalf of all*

11  *other participants and beneficiaries of the Plan." Id.*, ¶ 24.  The specific conduct

12  Plaintiff alleges repeatedly refers to his claim, "and related and/or similar

13  claims" under the Plan.  *Id.*, ¶¶ 27B, 27C, 27G, 27H, 27I, 27J, 27K, 27L.  This claim

14  seeks any and all "appropriate equitable relief from the defendants", which in

15  this case may appropriately include removal of Prudential as a fiduciary and

16  other appropriate injunctive relief.  *Id.*, ¶ 28.  Such injunctive relief would inure

17  to the benefit of the Plan regardless of the outcome of Plaintiff's claim for benefits

18  under ERISA § 502(a)(1)(B).

19       The Third Cause of Action specifically seeks to permanently enjoin

20  Prudential from acting as a fiduciary with respect to the Plan.  *See id.*, ¶ 32.

21  Moreover, Plaintiff's claim seeks to enjoin Defendant from wrongfully

22  interpreting the Policy in the following ways:

23       A.    From denying benefits based upon an incorrect definition of "total
              disability" which is inconsistent with California law regarding the
24            definition of disability regardless of the definition purportedly
              contained in the Policy;[2]
25

26   ───────────────────────

27        [2] California law specifically defines "total disability" for insurance
     purposes as the inability to perform with reasonable continuity the substantial
28   and material acts of any gainful occupation and requires insurers to consider the
     realistic job market for insureds before terminating benefits, regardless of the

5

1   The Complaint also prays for an injunction against Defendants' future

2   termination of her benefits, and for attorneys' fees. *See id.*, ¶ 32.

3       Plaintiff's Fourth Cause of Action alleges that Defendants failed to

4   provide documents following her request as required by ERISA § 104(b)(4), 29

5   U.S.C. § 1024(b)(4) despite her proper request for such documents. She alleges

6   that Prudential is the party designated by the plan to make benefits

7   determinations, and is the plan funder. She also alleged that Prudential "was

8   and remains the de facto plan administrator and fiduciary of the Plan." *Id.*, ¶ 3.

9   **III.   ARGUMENT**

10      **A.   Edwards' Breach of Fiduciary Duty Claim Under ERISA**

11           **§§502(a)(2) and 409 Is Permissible**

12      ERISA requires fiduciaries to discharge their duties with respect to a plan

13   "solely in the interest of the participants and beneficiaries and . . . for the

14   exclusive purpose of . . . providing benefits to participants and their beneficiaries;

15   and . . . defraying reasonable expenses of administering the plan. . . ." ERISA §

16   404(a)(1), 29 U.S.C. § 1104(a)(1). ERISA specifically enumerates the liability of

17   fiduciaries, in pertinent part, as follows:

18       *Any person who is a fiduciary* with respect to a plan who *breaches any*
         *of the responsibilities, obligations, or duties imposed upon fiduciaries by*
19       *this title* shall be personally liable to make good to such plan any
         losses to the plan resulting from each such breach, and to restore to
20       such plan any profits of such fiduciary which have been made
         through use of assets of the plan by the fiduciary, *and shall be subject*
21       *to such other equitable or remedial relief as the court may deem*
         *appropriate, including removal of such fiduciary.*
22

23

24   definition in any disability policy. *See Moore v. American United Life Ins. Co.*, 150
25   Cal.App.3d 610, 630 (1984) (citing *Erreca v. West States Life Ins. Co.*, 19 Cal.2d 388,
     394-95 (1942)). Recently the Ninth Circuit confirmed that the *Erreca-Moore*
26   definition of disability is the required standard for disability determination in
     California regardless of the actual policy definition. *Hangarter v. Provident Life &*
27   *Accident Ins. Co.*, 373 F.3d 998, 1006-07 (9th Cir. 2004). The California standard is a
     law regulating insurance and is thus binding on Prudential. *See Unum Life Ins.*
28   *Co. of Am. v. Ward*, 526 U.S. 538 (1999).

1    ERISA § 409(a), 29 U.S.C § 1109(a) (emphasis added).

2        The Ninth Circuit has specifically held that insurers such as Prudential are

3    fiduciaries that are subject to ERISA's statutory obligations and enforcement

4    scheme.  *See Pacificare, Inc. v. Martin*, 34 F.3d 834 (9th Cir. 1994).  In *Pacificare*, the

5    insurer sued for declaratory relief under ERISA § 502(a)(3), and the court

6    considered whether it was a fiduciary subject to ERISA's remedial scheme.  As

7    the Ninth Circuit explained, because Pacificare administered benefits and made

8    benefits decisions, it was a fiduciary subject to § 502's civil enforcement

9    remedies:

> "An ERISA fiduciary includes anyone who exercises discretionary authority over the plan's management, anyone who exercises authority over the management of its assets, and anyone having discretionary authority or responsibility in the plan's administration." *Credit Managers Ass'n v. Kennesaw Life & Acc. Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987).  Insurers can be ERISA fiduciaries if "they are given the discretion to manage plan assets or to determine claims made against the plan.... [A]n insurer will be found to be an ERISA fiduciary if it has the authority to grant, deny, or review denied claims." *Kyle R.R. v. Pacific Admin. Serv.*, 990 F.2d 513, 517-18 (9th Cir.1993).
>
> Pacificare points to evidence in the record that it had the discretion to approve or deny claims.  Martin does not dispute this evidence, but only maintains that the named administrator of the plan, not Pacificare, was the fiduciary.  However, "third party administrators ... are not fiduciaries under ERISA when they merely perform ministerial duties or process claims." *Id.* at 516. Pacificare claims that the administrator named in the plan did not make discretionary decisions, and Martin does not allege that the named administrator had more than ministerial responsibilities. Thus, we must conclude that Pacificare had discretionary duties and was a fiduciary for the purposes of section 1132(a)(3).

24   34 F.3d at 837-838.

25        As a plan participant, ERISA specifically authorizes Plaintiff to bring a

26   civil action "for appropriate relief under § 409. . . ."  ERISA § 502 (a)(2), 29 U.S.C.

27   § 1132(a)(2).  As shown below, Plaintiff's Complaint is expressly in accordance

28   with the claims Congress has empowered her to bring in response to Prudential's

7

1    conduct. Defendants contend that Plaintiff seeks only "an individual remedy"

2    rather than relief on behalf of the Plan as a whole. This is based upon a

3    distortion of Plaintiff's Complaint. As noted above, Plaintiff has brought the

4    claim on behalf of *all* Plan participants. Moreover, Defendants improperly

5    assume Plaintiff's Complaint is limited to allegations that it unreasonably

6    handled *her* claim. Instead, Plaintiff alleges that Prudential did not isolate her

7    claim, but that it handled it in accordance its company-wide and Plan-wide

8    procedures for claims handling, such procedures violating the terms of the Plan

9    and applicable law. Plaintiff's Complaint specifically refers to "related claim

10   and/or similar claims."

11            ERISA § 502(a) specifically allows a plan participant to seek a fiduciary's

12   removal, and the Ninth Circuit has affirmed a district court's order doing so. 29

13   U.S.C. § 1132(a)(2); *Donovan v. Mazzola*, 716 F.2d 1226, 1236-39 (9th Cir. 1984). In

14   *Donovan*, the Secretary of Labor brought an action against pension fund trustees

15   for breach of fiduciary duty under ERISA. In addition to injunctive relief, the

16   Secretary sought, and the district court ordered, removal of the trustees and the

17   appointment of an investment manager to oversee the pension for a period of ten

18   years. The Ninth Circuit affirmed. It first noted that ERISA specifically allows

19   for such broad remedies: "Where there has been a breach of fiduciary duty,

20   ERISA grants to the courts broad authority to fashion remedies for redressing the

21   interests of participants and beneficiaries." *Donovan, supra,* 716 F.2d at 1235.

22   Congress drew upon traditional principles of trust law, which "provides for

23   broad and flexible remedies in cases involving breaches of fiduciary duty." *Id.*

24   Accordingly, courts also have a duty "to enforce the remedy which is most

25   advantageous to the participants and most conducive to effectuating the

26   purposes of the trust." *Id*. The court specifically affirmed the district court's

27   removal of the trustees, and explained:

28

> At common law, a court could completely remove a trustee if the court found that continuation as a trustee would harm the beneficiary's interests [citation omitted]. Under the broad remedial provision of ERISA courts have also found removal of fiduciaries to be appropriate remedy upon findings of imprudence, divided loyalties, and prohibited transactions. [Citations omitted.] Thus, in the present case where the trustees committed numerous ERISA violations, the district court acted well within its broad discretion in divesting the individual appellants of their investment functions as trustees of the Pension Fund.

716 F.3d at 1238-39.

Plaintiff believes that the evidence will show Prudential has and continues to commit numerous ERISA violations, not only with respect to Plaintiff's claim, but in accordance with its Plan-wide claims handling procedures. It would be improper to dismiss such a claim at the outset, particularly in light of the fact that the Ninth Circuit and several other courts throughout the country have specifically granted such relief. *See Donovan, supra,* 716 F.2d at 1235; *Brock v. Robbins,* 830 F.2d 640 (7th Cir. 1987) (removal proper even where no monetary losses suffered); *Katsaros v. Cody,* 744 F.2d 270, 281-83 (2nd Cir. 1984) (removal of trustee and replacement with a court-appointed manager), *cert. denied,* 464 U.S. 1072 (1984); *Eaves v. Penn,* 426 F.Supp. 830 (W.D. Okla. 1976); *Marshall v. Snyder,* 572 F.2d 894, 901 (2nd Cir. 1978).

In addition, Plaintiff also seeks injunctive relief regarding on-going interpretation of terms in the Plan, prohibiting Prudential from denying benefits without regard to the actual job duties of proposed gainful occupations and requiring it to apply the definition of "total disability" required under California law for future claims. Such injunctive relief would not only benefit Plaintiff but all Plan participants and thus the Plan as a whole. Further, permanent injunctions prohibiting certain conduct have been widely adopted in ERISA cases. *Schwartz v. Interfaith Med. Ctr.,* 715 F.Supp. 1190 (E.D.N.Y. 1989) (court ordered preliminary injunction requiring compliance with ERISA); *Beck v.*

1     *Levering*, 947 F.2d 639, 641 (2nd Cir. 1991) (ERISA imposes a high standard on

2     fiduciaries, and serious misconduct that violates statutory obligations is

3     sufficient grounds for a permanent injunction); *Fechter v. HMW Indus., Inc.*, 879

4     F.2d 1111 (3rd Cir. 1989); *Martin v. Feilen*, 965 F.2d 660, 672-73 (8th Cir. 1992)

5     (holding that district court properly entered a permanent injunction against

6     defendants because they had repeatedly used their fiduciary control to profit

7     from self-dealing.)  Because the remedies Plaintiff seeks under the Second Cause

8     of Action are distinct from the recovery of her individual benefits, the Court

9     should sustain this claim.

10         **B.    Plaintiff's Claim Under ERISA § 502(a)(3) Is Permissible**

11         In addition to having an express right to sue to recover benefits under

12     ERISA § 502(a)(1)(B), participants and beneficiaries may also seek equitable relief

13     in connection with a benefits dispute.  ERISA § 502(a)(3) provides ERISA plan

14     participants and beneficiaries with standing to bring a civil suit: "(A) to enjoin

15     any act or practice which violates any provision of this title or the terms of the

16     plan, or (B) to obtain other appropriate equitable relief (i) to redress such

17     violations or (ii) to enforce any provisions of this title or the terms of the plan. . ."

18     29 U.S.C. § 1132(a)(3).

19         Here, Plaintiff seeks Prudential's removal and injunctive relief as

20     discussed above under ERISA § 502(a)(3) as well.  Moreover, there is no

21     limitation that her ERISA § 502(a)(3) claim be brought on behalf of the Plan as a

22     whole as is the case with her claim under ERISA § 502(a)(2).  *Compare Varity Corp.*

23     *v. Howe*, 516 U.S. 489 (1996) and *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S.

24     134, 142 (1985).

25     / / /

26     / / /

27     / / /

28

1. **There is No Bar to Bringing Both ERISA §§ 502(a)(3) and 502(a)(1)(B) Claims In the Same Action When ERISA § 502(a)(1)(B) Cannot Provide Complete Relief.**

Defendants misread *Varity* by suggesting that ERISA §§ 502(a)(3) and 502(a)(1)(B) claims cannot be brought in the same action. In fact, the Supreme Court in *Varity* construed ERISA civil enforcement scheme expansively and held that ERISA § 502(a)(3) is a "catch-all" provision guaranteeing individual ERISA plan participants the right to adequate recovery for breaches of fiduciary duty. *Varity*, 516 U.S. at 509-13. The Ninth Circuit has stated that *Varity* "effectively overturn[ed]" a prior holding by the Circuit that a plaintiff is precluded from pursuing any individual relief for breach of fiduciary duty. *See McLeod v. Oregon Lithoprint, Inc.*, 102 F.3d 376, 377-78 (9th Cir. 1996). In fact, a § 502(a)(3) claim is only improper where a participant may obtain complete, or "*adequate*" relief. *Forsythe v. Humana*, 114 F.3d 1467, 1475 (9th Cir. 1997).

Courts have repeatedly denied motions to dismiss claims under ERISA § 502(a)(3) even if the relief sought does not reach all plan participants. Recently, the Northern District has held in two cases with identical facts to this case that a plaintiff may proceed with an § 502(a)(3) claim if the plaintiff "allege[s] wrongful conduct that, although not affecting all plan participants, does go beyond the mere wrongful calculation of benefits." *Ehrman v. Standard Ins. Co.*, 2007 WL 1288465, at *4 (N.D. Cal. 2007); *Finkelstein v. The Guardian Life Ins. Co. of America*, 2007 WL 4287329, at *4 (N.D. Cal. 2007).[3]

In *Ehrman*, the plaintiff alleged "some form of self-dealing through the intentional adoption of biased claim practice and procedures . . . which are

---

[3] Prudential's reliance on the Fourth Circuit's opinion in *Korotynska v. Met. Life Ins. Co.* 474 F.3d 101 (4th Cir. 2006) is misplaced, because *Korotynska's* holding was based on the implicit assumption that the court can look beyond the pleadings at the motion to dismiss stage. The *Finkelstein* court held that it was inappropriate at the pleading stage to make such an assumption, because at the motion to dismiss stage the court must accept the plaintiff's allegations as true. *See Finkelstein*, 2007 WL 4287329, at *4, fn. 1.

11

1    systematically designed to increase the financial profitability of Defendant."

2    *Ehrman, supra*, 2007 WL 1288465, at *4. The court held that the defendant's

3    breaches of fiduciary duty could not be remedied through an award of benefits

4    and allowed an ERISA § 502(a)(3) claim to proceed. *See id.* Similarly, in

5    *Finkelstein*, the court rejected the defendants' motion to dismiss the plaintiff's

6    ERISA § 502(a)(3) claim. The court held that the plaintiff set forth allegations

7    beyond the denial of benefits by alleging: that the defendant systematically

8    denied legitimate claims to boost profits; that it unreasonably failed to

9    investigate the basis for denying claims; and that it unreasonably failed to apply

10   reasonable standards for investigating and processing claims. *See Finkelstein*,

11   *supra*, 2007 WL 4287329, at *4.

12           Here, as was the case in *Ehrman* and *Finkelstein*, ERISA § 502(a)(1)(B) does

13   not provide adequate relief. Edwards' Complaint does not merely assert an

14   erroneous denial of benefits. Instead, it asserts that Prudential has a pattern and

15   practice of denying legitimate claims in order to boost profits. In order to further

16   that practice it misinterprets policy terms, ignores claimants' realistic job

17   prospects and ignores the specific duties of supposed gainful occupations.

18           ERISA § 502(a)(1)(B) permits the recovery of past benefits, interest and

19   attorneys' fees, but if Plaintiff prevailed on this claim she would then be placed

20   *back on claim* subject to Prudential's further improper claims handling practices.

21   ERISA § 502(a)(1)(B) does not allow for redress concerning ongoing claims

22   handling activities. Insurers with financial incentives to terminate claims who

23   intentionally apply the incorrect definition of disability should not be allowed to

24   continue as a fiduciary, at least without some sort of oversight procedures. Yet,

25   without additional relief under ERISA section 502(a)(3), this is exactly what

26   would happen.

27   ///

28

2.   The United States Solicitor General and Department of Labor Agree That "Make-Whole" Monetary Relief Is Available Under 502(a)(3)

Relief under § 502(a)(1)(B) is also inadequate in another important respect — it does not return Plaintiff to the position she would have been in had Prudential not committed its breach of fiduciary duty. That relief provides Plaintiff with past benefits, interest and attorneys' fees, but does nothing to redress the consequential economic harm she and her family have been forced to endure, or the emotional trauma and anxiety needlessly occasioned by Prudential's withholding of sorely-needed disability benefits.

The United States Supreme Court has never squarely addressed whether ERISA § 502(a)(3) authorizes an award of money damages against a *fiduciary* such as Prudential. Instead, *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) concerned liability of a non-fiduciary. On the other hand, the Supreme Court recently recognized that the "equitable relief" authorized by ERISA § 502(a)(3) means relief typically available in equity for breach of trust. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 217 (2002). "Make-whole" relief, i.e., money damages designed to place the Plaintiff in the position she would have been had the breach not occurred, was typically available in courts of equity. *See* Restatement (Second) of the Law of Trusts, §§ 2 cmts. e and f, 197 (1959). A beneficiary could maintain a suit in equity to obtain various forms of relief, including "to compel the trustee to redress a breach of trust." *Id.*, § 199(a)- (c). The trustee's liability in the event of a breach gave rise to various alternative remedies, including a remedy that "will put [the beneficiary] in the position in which he would have been if the trustee had not committed the breach of trust." *Id.*, § 205 & cmt. a.

It is for these reasons that the United States Solicitor General and Department of Labor recently explained to the United States Supreme Court in

13

1    their amicus brief filed in *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004) that

2    ERISA § 502(a)(3) should allow for the recovery of "make-whole" monetary

3    relief. As the government explained, "after Great-West, the government has

4    taken the position in several cases pending in courts of appeals that Section

5    502(a)(3) allows at least some forms of 'make-whole' relief against a breaching

6    fiduciary in light of the general availability of such relief in equity at the time of

7    the divided bench." Req. Jud. Not., Exh. C, p. 27 fn.13.

8        The Court in *Davila* did not reach the issue of "make-whole" relief because

9    it was not squarely before the Court. Nevertheless, oral argument included

10   several justices' expression of concern for the inadequacy of relief under ERISA §

11   502(a)(1)(B) and the possibility that such an interpretation of § 502(a)(3) could fill

12   the gap. Indeed, Justice Ginsburg wrote a concurring opinion, in which Justice

13   Breyer joined, to specifically highlight the issue.

14       Justice Ginsburg acknowledged a "rising judicial chorus urging that

15   Congress and [this] Court revisit what is an unjust and increasingly tangled

16   ERISA regime." *Davila*, 542 U.S. at , quoting *DiFelice v. Aetna U.S. Healthcare*, 346

17   F.3d 442, 453 (3rd Cir. 2003) (Becker, J., concurring). "Because the Court has

18   coupled an encompassing interpretation of ERISA's preemptive force with a

19   cramped construction of the "equitable relief" allowable under § 502(a)(3), a

20   "regulatory vacuum" exists: "[V]irtually all state law remedies are preempted but

21   very few federal substitutes are provided." *Id.* at 456 (internal quotation marks

22   omitted)." *Id.*

23       Justices Ginsburg and Breyer specifically urged Courts such as the present

24   one to consider anew the availability of "make-whole" or some form of

25   compensatory damages for a breach of fiduciary duty and predicted the Court

26   would one day expressly uphold a participant's ability to pursue such damages:

27   / / /

28

14

As the array of lower court cases and opinions documents, *see, e.g.,*
*DiFelice; Cicio v. Does,* 321 F.3d 83 (C.A.2 2003), cert. pending *sub*
*nom. Vytra Healthcare v. Cicio,* No. 03-69, 72 USLW 3093 (2003), fresh
consideration of the availability of consequential damages under
§502(a)(3) is plainly in order. *See* 321 F.3d. at 106, 107 (Calabresi, J.,
dissenting in part) ("gaping wound" caused by the breadth of
preemption and limited remedies under ERISA, as interpreted by
this Court, will not be healed until the Court "start[s] over" or
Congress "wipe[s] the slate clean"); *DiFelice,* 346 F.3d, at 467 ("The
vital thing ... is that either Congress or the Court act quickly,
because the current situation is plainly untenable."); Langbein,
*What ERISA Means by "Equitable": The Supreme Court's Trail of Error*
*in Russell, Mertens, and Great-West,* 103 Colum. L.Rev. 1317, 1365
(2003) (hereinafter Langbein) ("The Supreme Court needs to ...
realign ERISA remedy law with the trust remedial tradition that
Congress intended when it provided in § 502(a)(3) for] 'appropriate
equitable relief.' ").

\*        \*        \*

"Congress ... intended ERISA to replicate the core principles of
trust remedy law, including the make-whole standard of relief."
Langbein 1319.  I anticipate that Congress, or this Court, will one
day so confirm.

542 U.S. at 223-24.

## C.    Edwards' Claim Under ERISA § 104(b)(4)  Is Permissible

Prudential's contention that the Fourth Cause of Action fails as a matter of

law is flawed because it relies on The H.F. Ahmanson & Company designation as

plan administrator on the Plan document.  However, the text of ERISA, recent

Department of Labor regulations and recent case law indicate that the test for

liability against an insurer under ERISA can include whether the insurer acted as

a "de facto" plan administrator.  Plaintiff clearly alleged that Prudential served

as a "de facto" plan administrator and the facts thus far indicate that it remains a

factual issue.

ERISA § 502(c)(1)(B) states that "any" administrator who fails to comply

with a request for information by a participant or beneficiary required under

ERISA is liable for statutory penalties.  29 U.S.C. § 1132(c)(1)(B).  There is no

indication in section 502(c)(1)(B) that its scope was limited to the designated plan

administrator in the plan document.

15

1     Moreover, recent Department of Labor regulations applicable to claims

2   filed after January 1, 2002 require the disclosure of information clearly in the sole

3   possession of insurers like Prudential.  The regulations require the plan

4   administrator to provide a claimant with written or electronic notification of a

5   plan's benefit determination on review, including the following information:

6

7       (5) In the case of a group health plan or a plan providing
        disability benefits--

8
        (i) If an internal rule, guideline, protocol, or other similar
9       criterion was relied upon in making the adverse determination, either
        the specific rule, guideline, protocol, or other similar criterion; or
10      a statement that such rule, guideline, protocol, or other similar
        criterion was relied upon in making the adverse determination and that
11      a copy of the rule, guideline, protocol, or other similar criterion
        will be provided free of charge to the claimant upon request;
12

13   29 C.F.R. § 2660.503-1(j).

14     Moreover, the regulations state that the following documents are relevant

15   parts of a claimant's claim, and presumably part of the administrative record:

16      (8) A document, record, or other information shall be considered
        ``relevant'' to a claimant's claim if such document, record, or other
17      information

18      (i) Was relied upon in making the benefit determination;
19      (ii) Was submitted, considered, or generated in the course of
        making the benefit determination, without regard to whether such
20      document, record, or other information was relied upon in making the
        benefit determination;
21      (iii) Demonstrates compliance with the administrative processes and
        safeguards required pursuant to paragraph (b)(5) of this section in
22      making the benefit determination; or
        (iv) In the case of a group health plan or a plan providing
23      disability benefits, constitutes a statement of policy or guidance with
        respect to the plan concerning the denied treatment option or benefit
24      for the claimant's diagnosis, without regard to whether such advice or
        statement was relied upon in making the benefit determination.
25

26   29 C.F.R. § 2660.503-1(m)(8).

27   ///

28

1         The Ninth Circuit has since made clear that an insurer may be held liable

2    as a plan administrator, even if the insurer is not the named plan administrator,

3    if the insurer functioned as the de facto plan administrator. *See Everhart v.*

4    *Allmerica Fin. Life Ins. Co.*, 275 F.3d 751, 755-56 (9th Cir. 2001) (citing *Forsyth v.*

5    *Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997)). Numerous courts, including those in

6    the Northern District, have recently upheld ERISA claims against insurers at the

7    pleading stage, stating that it was a factual issue whether or not an insurer

8    functioned as a plan administrator. *See, e.g., Moody v. Liberty Life Assur. Co.*, 2007

9    WL 1174828, at *4 (N.D. Cal. 2007) (holding it was premature to dismiss ERISA

10   claims without leave to amend against an insurer because under some "factual

11   circumstances [the insurer] could be considered 'co-plan administrators'"); *Leung*

12   *v. Skidmore, Ownings & Merrill LLP*, 213 F.Supp.2d 1097 (N.D.Cal. 2002) (denying

13   summary judgment of ERISA claim against insurer alleged to function as a "co-

14   plan administrator" even though insurer was not designated in the plan

15   document).

16        The court *Cyr v. Reliance Standard Life Ins. Co.*, ___ F.Supp.2d ___, 2007 WL

17   4246049, at * 8 (C.D. Cal. 2007) illustrated the absurdity of not finding an insurer

18   who managed and administered a benefits plan to be the "de facto" plan

19   administrator subject to liability. The court held that because the insurer had

20   ultimate authority on all matters relating to plan benefits, including paying for

21   benefits and making benefit determinations, it was acting as a plan administrator

22   under ERISA § 502(a)(1)(B). *Id.* at *7-8. The court stated that to rule otherwise

23   "would allow an end run around ERISA's statutory purpose of protecting

24   employee benefits." *Id.*

25        This case illustrates the logic of naming Prudential as the "de facto" plan

26   administrator as clearly as the example in *Cyr.* Here, there is no indication that

27   Washington Mutual was designated as the Plan Administrator after it acquired

28

PLAINTIFF ELIZABETH E. EDWARDS' OPPOSITION TO MOTION TO DISMISS    Case No. 3:07-CV-5807 (VRW)

1   The H.F. Ahmanson & Company in 1998, and there is no indication H.F.

2   Ahmanson & Company or Washington Mutual performed any plan

3   administration duties in regards to Plaintiff's claim or any other claims. Indeed,

4   counsel for Prudential acknowledges its status as the "Real Party in Interest" on

5   their pleadings.

6          Furthermore, Edwards clearly alleged that Prudential served as the de

7   facto administrator and fiduciary of the Plan, and that it administered the

8   benefits under the Plan. *See* Req. Jud. Not., Exh. A, ¶¶ 3, 6. In the Complaint,

9   Plaintiff alleges that it was Prudential, and not H.F. Ahmanson & Company or

10  Washington Mutual, that issued the notification of Prudential's decision to deny

11  benefits. As such, it was acting as the plan administrator under the Department

12  of Labor regulation 29 C.F.R. § 2660.503-1(j). Moreover, Prudential is the party

13  with exclusive control of the relevant information to Plaintiff's claim as defined

14  by the Department of Labor regulation 29 C.F.R. § 2660.503-1(m), including the

15  claim file as well as the guidelines and protocols for making benefit

16  determinations. Given the allegations and facts known, it makes no sense to

17  immunize Prudential for its failure to provide information when it was the party

18  with sole custody and control of such documents. The court should permit

19  Plaintiff's claim to go forward and allow her the opportunity to prove that

20  Prudential in fact acted as the "de facto" plan administrator.

21  **D.     Edwards Is Entitled to a Jury Trial For Her Claim For Benefits
            Under the Prudential Policy**

22

23          Just as *Great-West* confirms that a claim under ERISA § 502(a)(3) is an

24  equitable claim, it also clarified that a claim under ERISA § 502(a)(1)(B) is a legal

25  claim for the recovery of money damages. However, prior authorities that

26  rejected a plan participant's right to a jury trial, including the cases cited by

27  defendants, presumed to the contrary that a claim for benefits under ERISA §

28

1  502(a)(1)(B) was an equitable claim. *Knudson* has effectively overturned these

2  and other decisions that have found no jury trial exists in an ERISA benefits

3  action.

4      In *Knudson*, Great-West sought reimbursement of medical expenses it had

5  paid pursuant to an action under ERISA § 502(a)(3).  To justify its

6  reimbursement action under ERISA § 502(a)(3), Great-West claimed that its suit

7  was for restitution and therefore was a permissible equitable action.  The

8  Supreme Court rejected this argument, and in doing so, held that a claim for

9  money due and owing under a contract – the same type of action brought here –

10  is quintessentially an action at law.  The Court stated:

> Here, petitioners seek, in essence, to impose personal liability on
> respondents for a contractual obligation to pay money—relief that
> was not typically available in equity. "A claim for money due and
> owing under a contract is 'quintessentially an action at law.'" *Wal-
> Mart Stores, Inc. v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000) (Posner,
> J.). "Almost invariably . . . suits seeking (whether by judgment,
> injunction, or declaration) to compel the defendant to pay a sum of
> money to the plaintiff are suits for 'money damages,' as that phrase
> has traditionally been applied, since they seek no more than
> compensation for loss resulting from the defendant's breach of
> legal duty. [Citation] And "[m]oney damages are, of course, the
> classic form of legal relief." [Citation]

18  534 U.S. at 210.

19      Here, Plaintiff's suit with respect to her first cause of action likewise seeks

20  money damages, which the United States Supreme Court has just stated is a

21  classic form of "legal" relief.  The cases rejecting a plaintiff's right to a jury trial in

22  ERISA cases have done so based upon the legal remedy vs. equitable remedy

23  distinction.  In *Spinelli v. Gaughn*, 12 F.3d 853, 855 (9th Cir. 1993), the court

24  determined that an ERISA plaintiff is entitled to a jury trial if (1) the nature of his

25  or her claim is analogous to a common law suit and (2) the remedy provided is

26  legal as opposed to equitable in nature.  Contrary to prior precedent in this and

27  other Circuits, it is now clear that such relief is exclusively legal as opposed to

28

1  equitable in nature.  Plaintiff's right to a jury trial is thus guaranteed under the

2  Seventh Amendment.

3  **IV.    CONCLUSION**

4  Based on the foregoing, Plaintiff respectfully requests the Court to deny

5  Defendants' Motion to Dismiss in its entirety. To the extent the Court determines

6  that Plaintiff's Complaint is deficient in any respect, Plaintiff requests leave to

7  amend.

8

9  DATED:  December 13, 2007                    PILLSBURY & LEVINSON, LLP

10

11                                          By:    _____/s/_____
                                                Brian H. Kim, Esq.
12                                              Attorneys for Plaintiff
                                                ELIZABETH E. EDWARDS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF ELIZABETH E. EDWARDS' OPPOSITION TO MOTION TO DISMISS      Case No. 3:07-CV-5807 (VRW)