1  Terrence J. Coleman   (State Bar No. 172183)
   Brian H. Kim   (State Bar No. 215492)
2  PILLSBURY & LEVINSON, LLP
   The Transamerica Pyramid
3  600 Montgomery St., 31st Floor
   San Francisco, California 94111
4  Telephone: (415) 433-8000
   Facsimile:  (415) 433-4816
5  Email: tcoleman@pillsburylevinson.com, bkim@pillsburylevinson.com

6  Attorneys for Plaintiff
   ELIZABETH E. EDWARDS
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  ELIZABETH E. EDWARDS,            )   Case No.  3:07-CV-5807 (VRW)
                                     )
12              Plaintiff,           )   **PLAINTIFF'S FED. R. CIV. P. RULE**
                                     )   **52 NOTICE OF MOTION AND**
13  v.                               )   **MOTION FOR JUDGMENT;**
                                     )   **MEMORANDUM OF POINTS AND**
14  THE PRUDENTIAL INSURANCE         )   **AUTHORITIES IN SUPPORT**
    COMPANY OF AMERICA; THE H.F.     )
15  AHMANSON & COMPANY LONG TERM     )   Date:        October 16, 2008
    DISABILITY PLAN; et al.,         )   Time:        2:30 p.m.
16                                   )   Courtroom:   6, 17th Floor
                Defendants.          )   Judge:       Hon. Vaughn R. Walker
17  _____)

18  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

19       NOTICE IS HEREBY GIVEN that on October 16, 2008, at 2:30 p.m., or as soon

20  thereafter as counsel may be heard, in Courtroom 6 of the above-entitled Court, Plaintiff

21  Elizabeth E. Edwards will, and hereby does move this Court for Judgment on all claims for

22  relief against Defendants The Prudential Insurance Company of America ("Prudential") and

23  The H.F. Ahmanson & Company Long Term Disability Plan (the "Plan").

24       By this motion, Plaintiff Elizabeth E. Edwards seeks judgment on her claim for long –

25  term disability benefits provided by the Plan under section 502(a)(1)(B) of the Employment

26  Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  The Plan is

27  administered and insured by The Prudential Insurance Company of America ("Prudential").

28  Edwards also seeks judgment on her breach of fiduciary duty claim for injunctive relief against

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

Prudential under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  In particular, Plaintiff seeks a determination that:  1) the preponderance of the evidence shows that Prudential's decision on July 25, 2006 to terminate her benefits under the Plan and its subsequent denial of Plaintiff's appeal on July 6, 2007 were incorrect; and 2) that Prudential breached its fiduciary duty of loyalty to her by terminating her benefits without good cause four times in seven years. Accordingly, Plaintiff seeks an order and judgment in her favor awarding all past benefits, reinstating her claim for monthly benefits under the Plan, and awarding appropriate equitable relief.  Plaintiff's claim for interest, attorneys' fees and costs under ERISA may appropriately be determined upon post-trial motion.

In support of this Motion, Plaintiff relies on this Notice of Motion and Motion; the Memorandum of Points and Authorities in support thereof; the Declaration of Brian H. Kim and exhibits thereto; the Declaration of Elizabeth Edwards and exhibits thereto; the ERISA Administrative Record filed pursuant to the stipulation of the parties; the Proposed Order lodged herewith; the complete Court file in this action; and such other matters as may be presented to the court at the hearing.

Dated:  September 11, 2008          PILLSBURY & LEVINSON, LLP


By:      /s/ Terrence J. Coleman
         Terrence J. Coleman
         Brian H. Kim
         Attorneys for Plaintiff
         ELIZABETH E. EDWARDS

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PLAINTIFF'S MOTION FOR JUDGMENT                    Case No. 3:07-CV-5807 (VRW)

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED....................................3

III.  FACTUAL BACKGROUND ...............................................................3

    A.    Edwards' Occupation and Relevant Plan Terms ..........................3

    B.    Edwards' Condition .....................................................................4

    C.    Prudential's Campaign to Terminate Benefits .............................5

        1.    Termination No. 1 ..............................................................5

        2.    Termination No. 2 ..............................................................6

        3.    Termination No. 3 ..............................................................7

    D.    Termination No. 4 – The Final Termination .................................7

        1.    Prudential's Meaningless Surveillance................................7

        2.    The Functional Capacity Evaluation ...................................9

        3.    Edwards and Her Physicians Submit Convincing Proof of
              Her Continued Disability That Prudential Ignored .........11

        4.    The Medical Records Review by MES Solutions, Inc. and
              Dr. Bauer..........................................................................12

    E.    Edwards Appeals With Comprehensive Evidence of Her Disability
          and Inability to Perform Any Occupation, Which Prudential Ignores .........13

    F.    The Social Security's Determination That Edwards Remains Totally
          Disabled from Any Occupation....................................................16

IV.  ARGUMENT........................................................................................17

    A.    *De Novo* Review Applies In This Case ........................................17

    B.    Edwards' Records Consistently Demonstrate Her Total Disability To
          Be Employed At Any Occupation................................................17

    C.    The FCE Was Fatally Flawed and Cannot Serve As the Basis for
          Terminating Edwards' Benefits....................................................18

    D.    The Surveillance Does Not Provide Any Evidence Edwards Can
          Work At Any Occupation And Actually Supports Edwards'
          Continued Disability ...................................................................19

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-i-

E.    Dr. Bauer and Dr. Denver's Reports Should Be Disregarded......................21

        1.    The Refusal to Credit Edwards' and Her Physicians' Reports of
              Chronic Pain And The Impairment It Causes Was Arbitrary...........21

        2.    Prudential's Failure to Conduct Any Vocational Analysis
              Warrants Reversal of the Termination .............................................21

F.    Prudential's Refusal to Credit Social Security's Determination That
      Edwards Was Totally Disabled From Any Occupation Warrants Reversal
      of the Termination .........................................................................................23

G.    The Preponderance of the Evidence Shows That Edwards Prevails on Her
      Breach of Fiduciary Duty Claim ...................................................................23

V.    CONCLUSION.........................................................................................................25

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

# TABLE OF AUTHORITIES

## CASES

*Abatie v. Alta Health & Life Ins. Co.,*
458 F.3d 955, 963 (9th Cir. 2006) ................................................17

*Caplan v. CNA Short Term Disability Plan*
479 F. Supp. 2d 1108, 1112 (N.D. Cal. 2007) ........................................23

*Carridine v. Barnhart*
360 F.3d 751, 753 (7th Cir. 2004) ................................................21

*Demirovic v. Building Service 32 B-J Pension Fund*
467 F.3d 208, 215 (2nd Cir. 2006) ................................................22

*Donovan v. Mazzola*
716 F.2d 1226, 1238-39 (9th Cir. 1983) ............................................24

*Fair v. Bowen*
885 F.2d 597, 601 (9th Cir. 1989) ................................................21

*Finley v. Hartford Life and Acc. Ins. Co.*
2007 WL 4374417, *9 (N.D. Cal. Dec. 14, 2007) .....................................19

*Grosz-Salomon v. Paul Revere Life Ins. Co.*
1999 WL 33244979 (C.D. Cal. Feb. 4, 1999) .........................................19

*Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Inc. Protection*
349 F.3d 1098, 1109 fn. 8 (9th Cir. 2003) .........................................17

*Kearney v. Standard Ins. Co.*
175 F.3d 1084, 1094 (9th Cir. 1999) ...............................................3

*King v. Cigna Corp.*
2007 WL 2288117, *11 (N.D. Cal. Aug. 7, 2007) .....................................19

*Merrill v. Apfel*
224 F.3d 1083 (9th Cir. 2000) .....................................................18

*Metropolitan Life Ins. Co. v. Glenn*
128 S. Ct. 2343, 2350 (2008) ...................................................5, 23

*Patelco Credit Union v. Sahni*
262 F.3d 897 (9th Cir. 2001) ..................................................23, 24

*Poulos v. Motorola Long Term Disability Plan*
93 F.Supp.2d 926, 932 (N.D. Ill 2000) .............................................22

*Rawls v. Unum Life Ins. Co. of Am.*
219 F. Supp. 2d 1063, 1066 (C.D. Cal. 2002) .......................................25

*Rekstad v. U.S. Bancorp*
451 F.3d 1114 (10th Cir. 2006) ....................................................18

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

*Sabatino v. Liberty Life Assur. Co. of Boston*
    286 F. Supp. 2d 1222 (N.D. Cal. 2003) ...................................................21

*Saffon v. Wells Fargo & Co. Long Term Disability Plan*
    522 F.3d 863, 872-873 (9th Cir. 2008) ..................................................21

*Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*
    332 F.3d 1198, 1203 (9th Cir. 2003) .....................................................24

*Silver v. Exec. Car Leasing Long-Term Disability Plan*
    466 F.3d 727, 733 (9th Cir. 2006) .........................................................17

*Spangler v. Lockheed Martin Energy Sys., Inc.*
    313 F.3d 356, 359-60 (6th Cir. 2003) ....................................................19

*Thiverge v. Hartford Life and Acc. Ins. Co.*
    2006 WL 823751 at *11-12 (N.D. Cal. 2007) ........................................20

*Varity Corp. v. Howe*
    516 U.S. 489, 515 (1996) .......................................................................25

**CODES**

ERISA section 502(a)(3) ......................................................................2, 24

29 U.S.C. § 1132(a)(3) ........................................................................2, 24

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

## I.     **INTRODUCTION**

Elizabeth Edwards is a 60 year-old woman who initially went on disability from her Loan Consultant position at H.F. Ahmanson & Company in 1998 in order to undergo fusion surgery for a herniated disc in her lumbar spine.  The surgery was a complete failure.  It resulted in a "non-union" – her spine did not fuse properly – and thus failed to resolve the chronic and vice-like pain that Edwards experienced in her lower back or the numbness and pain that developed in her legs.  In 2002, she underwent a second, more extensive surgery, consisting of a further fusion at L4-S1, a laminotomy at L4-5, and insertion of six pedicle screws and four rods in her spine:

 

Kim Decl., ¶ 2, Exh. A (E 01586).

But this surgery was also unsuccessful.  For the past six years, Edwards has suffered from Failed Back Surgery Syndrome, chronic and debilitating nerve pain, and chronic lumbosacral radiculopathy at 3 separate levels – S1, L4-5, and L-3 – confirmed by EMG/nerve conduction tests.  *Every single physician who has treated or examined Ms. Edwards, and the Social Security Administration, all concluded that she is plainly disabled*:

- **Orthopedic Surgeon Kenneth I. Light, M.D.**:  "Ms. Edwards suffers from ongoing neurogenic and neuropathic pain.  Her pain is severe and disabling.  She has muscle spasms and has lost neurologic function.  She has intermittent numbness and weakness in both her legs.  When she sits for more than five minutes her legs go numb and she has difficulty walking.  There is no possible way that Ms. Edwards is able to return to work."  Administrative Record ("AR") (E 00252).

- **Pain Management Specialist Wayne Wolfe, M.D.**:  "I have been caring for Ms. Edwards since 2003 on a q4 week basis for her chronic pain from Failed Back

PLAINTIFF'S MOTION FOR JUDGMENT                                    Case No. 3:07-CV-5807 (VRW)

Surgery Syndrome (FBSS). . . .Based on my evaluation of the patient every 4 weeks since October 2003, I find her totally and permanently disabled from her past and all work." AR (E 00455-00456).

- **Pain Management Specialist Robert Savala, M.D.**: "She continues to require high potency narcotics, muscular relaxant, and anti-inflammatories. . . .I continue to believe that the patient is significantly disabled and likely to be so for the rest of her life." AR (E 00799).

- **Prudential's IME physician George E. Becker, M.D.**: "It is my conclusion at this time, regardless of the cause of her chronic pain, that **she remains, in fact, disabled for work as described in the 7/7/99 employee's statement on a full-time basis.**" AR (E 00766) (Emphasis in original.)

- **Social Security Administration**: "We found that you became disabled under our rules on December 28, 1998." AR (E 01343).

For the past six years, Edwards has thus suffered from the unrelenting effects of Failed Back Surgery Syndrome, a condition characterized by chronic pain mixed with what her treating physicians call "nociceptive NMDA mediated CNS wind-up pain and neuropathic pain." AR (E 00241).

In spite of this all, Prudential engaged in what can only be called a campaign to terminate her benefits after initially approving her claim in 1999. *It terminated benefits on four separate occasions.* The final denial that resulted in this litigation is based on: (1) scant surveillance video of Ms. Edwards, a review of which *supports* her claim and could not possibly provide a basis to terminate benefits; (2) a Functional Capacity Evaluation Prudential obtained in which the evaluator corroborated the pain Ms. Edwards is forced to endure yet speculated she could work an 8-hour day ***despite the fact that the evaluator admitted he was instructed to "cut that part of the test" out that was designed to test her endurance for full-time work*** (Edwards Decl., ¶ 2, Exhs. A (E 001587), B); and (3) medical record reviews from two physicians who never examined Ms. Edwards and issued plainly biased reports that simply do not withstand scrutiny. Prudential conducted no vocational analysis whatsoever before concluding that Edwards could perform a full-time sedentary job, despite the fact the Plan required it to consider her education, training and experience when determining total disability and it knew she had been unemployed for 9 years.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    The applicable review in this case is *de novo*, and thus the Court is called upon to

2  independently determine whether Ms. Edwards is disabled and entitled to benefits. *Kearney v.*

3  *Standard Ins. Co.*, 175 F.3d 1084, 1094 (9th Cir. 1999) (*en banc*).  In this regard, each and

4  every one of Ms. Edwards' longtime treating physicians certify to her total and permanent

5  disability and base their conclusions on a mountain of objective evidence, and the Social

6  Security Administration has further declared Ms. Edwards to be disabled upon its review as

7  well.  As fully set forth below, Ms. Edwards is disabled and entitled to judgment in her favor.

8  **II.    STATEMENT OF ISSUES TO BE DECIDED**

9        A.    Does a preponderance of the evidence show that Prudential's decision to

10  terminate benefits was incorrect under the terms of the Plan?

11        B.    Did Prudential breach its fiduciary duties to Edwards by terminating her

12  benefits four times over seven years without good cause?

13  **III.    FACTUAL BACKGROUND**

14        **A.    Edwards' Occupation and Relevant Plan Terms**

15        From 1996 until the date she went on disability, Edwards worked as a Loan Consultant

16  for Home Savings Bank (acquired by The H.F. Ahmanson & Company).  She consolidated

17  residential home loans through realtors and other parties in the residential home business.  AR

18  (E 00318-00319).  She was skilled at her job, earning over $150,000.00 in commissions in her

19  last year.  AR (E 00667-00668).  She also was a very active person who enjoyed hiking,

20  jogging, golfing and playing tennis.  AR (E 00231 [Edwards Decl., ¶ 17]).

21        The Plan was initially sponsored by H.F. Ahmanson and funded through an insurance

22  policy purchased from Prudential.  Prudential makes all decision on claims and also pays all

23  benefits under the Plan terms.

24        The Plan defines total disability to require:

25         (1)  Due to Sickness or accidental injury, both of these are true:

              (a) You are not able to perform, for wage or profit, the material and substantial
26                 duties of your occupation.

27              (b) After the Initial Duration of a period of Total Disability you are not able to
                 perform for wage or profit the material and substantial duties of any job for
                 which you are reasonably fitted by your education, training or experience.
28  AR (E 00011).

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-3-

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

### B.    Edwards' Condition

Edwards began experiencing back pain as early as 1989, and a back injury in 1993 caused her to miss six months of work.  AR (E 01452, 01456).  She continued to suffer low back pain and weakness in both legs through 1997, when an MRI showed a herniated disk at L4-5 and degeneration at L5-S1 and L3-4.  AR (E 01452-01453, 01456).  On August 12, 1998, Edwards was diagnosed with a herniated disc at L4-5 by her long-time orthopedist Dr. Kenneth Light, M.D., who recommended spinal fusion.  AR (E01452-01453, 01456).  She stopped working on December 29, 1998 and then applied for long-term disability benefits with Prudential.  AR (E 01243-01245).  On January 12, 1999, Dr. Light performed an anterior L4-5 L5-S1 discectomy, partial L4-L5-S1 verbrectomy, and distraction fusion, L4-S1 using BAK implants with bone harvested through left iliac crest incision.  AR (E 01456-01460).

The fusion did not improve her pain symptoms nor the associated weakness and numbness in her legs, and further MRI and CT scanning indicated that the spine at L4-5 and L5-S1 had not healed completely.  AR (E 01398-01401, 01412).  On February 5, 2002, Dr. Light performed a L4-S1 posterolateral fusion, L4-5 laminotomy, requiring the insertion of six pedicle screws ad four rods in her spine.  AR (E 00853-00854); Kim Decl., Exh. A (E 01586).

Since the second fusion, Edwards has been diagnosed with and has been living with Failed Back Surgery Syndrome.  AR (E 00241 [Wolfe Decl., p. 1]).  According to Dr. Wolfe:

> She has developed chronic pain that is mixed nociceptive NMDA mediated CHS wind-up pain and neuropathic pain that is typical of FBSS.  The long-standing nerve irritation has caused recruitment of nerves and phenotypic changes that is typical of neuropathic pain.  Chronic nociceptive wind up pain develops from long standing pain signals that cause permanent changes in the neurons of the dorsal horn.  This causes an increased pain perceptive with a blocking of the down regulation of pain by the brain.

*Id.*  Edwards experiences numbness and weakness in both of her legs, and when she sits for more than five minutes, her legs go numb and she has difficulty walking.  AR (E 00252 [Light Decl., ¶ 4]).  This is completely corroborated by her most recent EMG/Nerve Conduction Study, documenting chronic lumbosacral radiculopathy at three levels.  AR (E 00213-00216).  In order to manage the chronic pain she experiences, she has undergone a "multidisciplinary approach" which includes "meditation, life coaching, regular exercise at low levels,

-4-

1  counseling, and anti-depressant medications."  AR (E 00241 [Wolfe Declaration, ¶ 4]).

2      For the past nine years, Edwards' treating physicians, including Dr. Wolfe and Dr.

3  Light, have consistently submitted reports to Prudential confirming the progression of

4  Edwards' disability and the chronic pain and impairment it causes.  Dr. Light has treated

5  Edwards on **39 occasions** for her condition (including his performance of the two surgeries)

6  over nine years and has examined Edwards **29 times**.  Kim Decl., ¶3, Exh. B.  Dr. Wolfe or a

7  practitioner under his supervision have treated Edwards **55 times over four years**.  Kim Decl.,

8  ¶4, Exh. C.  In addition, Edwards has endured dozens of treatments, x-rays and other

9  procedures from a variety of medical providers.  Kim Decl., ¶5, Exh. D.

10      **C.    Prudential's Campaign to Terminate Benefits**

11      In *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (2008). the Supreme

12  Court made clear that ERISA imposes "higher than-marketplace quality standards on insurers"

13  and that plan administrators engaging in claims processing had a fiduciary duty to act "solely

14  in the interests of the participants and beneficiaries of the plan."  As seen below, Prudential's

15  handling of Edwards' claim completely failed to meet this standard.

16      **1.    Termination No. 1**

17      On August 18, 1999, Prudential approved Edwards' claim for disability benefits and

18  began paying of $6,000.09 per month in benefits.  AR (E 01445-01446).  Just 2 months later,

19  on November 22, 1999 Prudential wrote to Edwards stating it was terminating benefits as of

20  January 13, 2000, *even though she was still recovering from surgery*.  It claimed that because

21  Dr. Light stated in earlier reports that the expected recovery time from surgery was one year, it

22  was automatically entitled to terminate benefits one year after the surgery date.  AR (E 01431-

23  01433).  This was a gross distortion of an October 12, 1999 Attending Physician Statement Dr.

24  Light submitted, in which he stated that Edwards' recovery time from surgery was

25  "[a]pproximately 12 months *or more*."  AR (E 01438) (emphasis added).  Prudential did

26  nothing to investigate whether Edwards had in fact sufficiently recovered to permit a return to

27  work, despite the fact that Dr. Light indicated she could require more than a year to recover

28  from surgery.  Moreover, it is an absurd position that an estimated recovery time from major

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    surgery is the same as an estimated date for the cessation of disability.

2        On May 2, 2000, Edwards' attorney, Mark Abelson, submitted an appeal of

3    Prudential's denial, enclosing a report from Dr. Light that confirmed that a CAT scan and an

4    MRI showed incomplete healing of the BAK cages, "especially at the L5-S1 level", and that

5    she could not work.  AR (E 01385-01386).  After confirming with its own neurologist

6    consultant that Edwards remained disabled, Prudential finally reinstated benefits on June 26,

7    2000.  AR (E 00888, 01234-01235).

8                    **2.        Termination No. 2**

9        As discussed above, Edwards had her second surgery on February 5, 2002.  Despite the

10   fact that this was a far more extensive surgery than her 1999 fusion, Prudential <u>again</u> took the

11   opportunity to deny benefits prospectively based upon an estimated date of recovery.  On

12   October 24, 2002 it sent Edwards another letter terminating her benefits as of December 31,

13   2002, even though no physician had released her to return to work.  AR (E 01210-01212).

14   Nothing in the Plan's policy allowed Prudential to predetermine a date to cut off benefits, but it

15   did so anyway.

16       Edwards again appealed through counsel and submitted numerous reports diagnosing

17   Edwards with Failed Back Surgery Syndrome and confirming her total disability:

18   - On January 16, 2003, orthopedist Dr. Masam Hattori, M.D examined Edwards and
     observed decreased sensation to cold in the L4-S1 distribution.  He diagnosed
19   Edwards with failed back syndrome, with myofascial pain, and possible lumbar
     facet arthropathy and radiculopathy.  AR (E 00811, 00815).

20   - On April 29, 2003, pain management specialist Dr. Robert Savala stated "She
     continues to require high potency narcotics, muscular relaxant, and anti-
21   inflammatories. . . .I continue to believe that the patient is significantly disabled
     and likely to be so for the rest of her life."  AR (E 00799).
22
23   - On May 21, 2003 Dr. Light stated that "based on her ongoing symptoms, and her
     level of function, I think that she would be considered permanent and totally
     disabled at this time. . . She will need ongoing medical care and will need ongoing
24   pain management."  AR (E 00798).

25       Rather than immediately reinstating benefits, Prudential required Edwards to submit to

26   an Independent Medical Examination, by a doctor of its own choosing, orthopedist and

27   psychiatrist Dr. George E. Becker.  He readily acknowledged the obvious – that Edwards

28   remained totally disabled under the Plan.  AR (E 00743, 00766-00767).  He confirmed that

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-6-

Edwards suffered from Failed Back Surgery Syndrome and stated that "It is my conclusion at this time, regardless of the cause of her chronic pain, **that she remains, in fact, disabled for work as described in the 7/7/99 employee's statement on a full-time basis**."  AR (E 00766) (emphasis in original).  On June 25, 2003 Prudential reinstated benefits.  AR (E 01197-01198).

### 3.    Termination No. 3

On April 27, 2004, Prudential terminated Edwards' benefits yet again on a patently absurd basis.  It claimed that Edwards' prior employer, H.F. Ahmanson, had been acquired by Washington Mutual, which was also insured by Prudential, on October 1, 1998.  Prudential asserted that disability coverage for Ahmanson employees under the Washington Mutual plan began on July 1, 1999.  Incredibly, Prudential asserted that because Edwards became disabled before the July 1, 1999 date, she was ineligible for benefits under the Washington Mutual plan.  AR (E 01183-01184).  Edwards was again forced to appeal through counsel.  It was utterly obvious that this termination lacked any merit, and on June 8, 2004, Prudential reinstated Edwards' benefits.[1]  AR (E 01179).

### D.    Termination No. 4 – The Final Termination

After receiving Dr. Becker's IME report confirming Edwards' continued disability, Prudential spent two years seeking evidence to justify terminating Edwards' benefits once again.  As discussed below, <u>none</u> of the evidence obtained upon by Prudential provided any valid basis for terminating Edwards' benefits.

### 1.    Prudential's Meaningless Surveillance

From December 19, 2004 to December 21, 2004, Prudential's investigator conducted three days of surreptitious surveillance of Edwards.[2]  AR (E 00614-00622, PRUE 01228-

---

[1] At this time, Edwards' attorney, Mr. Abelson, discovered that Prudential had underpaid Edwards' monthly benefit *for five years* and demanded the full benefits plus interest.  AR (E 00662, 00664-00665).  Prudential was forced to admit it had underpaid Edwards by *almost $600 per month for the past five years.*  AR (E 00920-00926, 01490-01491).

[2] Prior to its surveillance, Prudential sought Edward's private psychotherapy records to find out whether it could terminate benefits based upon the policy's provision limiting benefits to 24 months for disability due to mental illness.  AR (E 00013, 00910-00911).  No treating physician had indicated was disabled in any respect based upon a psychiatric condition.  Nevertheless, Prudential harassed Edwards' therapist Dr. Judith Levinson, Ph.D, and Mr.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

01229).  The investigator did not observe Edwards at all on December 21.  Prudential's

investigator engaged in three more days of surveillance of Edwards on August 17, 2005,

August 18, 2005 and August 21, 2005.  AR (E 00579-00586, PRUE 01226-01227).  Of those

three days, the investigator only obtained surveillance video of Edwards on August 21, 2005.

A review of the surveillance video and surveillance reports reveals that Prudential

relied on *less than one hour of* surveillance video taken over <u>six days</u> of surveillance:

| Date | Surveillance Time | Video Time | Activities Observed |
|---|---|---|---|
| Dec. 19, 2004 | 8 hours | 6 min. | Edwards observed getting into and out of car with female friend; carrying two hangers with green clothes on them; walking at Whole Foods parking lot with friend.  Friend has to take items out of car after Whole Foods shopping trip.  AR (E 00615-00618, 01228) |
| Dec. 20, 2004 | 9 hours | 35 min. | Edwards drives to podiatrist appointment; sits in car talking on cell phone; walks her small dog; carries a poinsettia and paper bag and places into car; carries a cardboard box and cookie tin and places into car; places a brown bag into car trunk; removes objects from car when returning home.  AR (E 00618-00621, 01229). |
| Dec. 21, 2004 | 8 hours | None | None.  AR (E 00621-00622, 01229). |
| Aug. 17, 2005 | 8 hours, 1 min. | None | None.  AR (E 00580-00581, 01226). |
| Aug. 18, 2005 | 8 hours | None | None.  AR (E 00581-00582, 01226). |
| Aug. 21, 2005 | 13 hours, 34 min. | 15 min., 48 sec. | Edwards leaves house with friend and is driven to volunteer stint at gift shop; lifting small stuffed animal and CD for customer; bends and kneels briefly to pick up CDs; Edwards limps after walking out of hospital; friend pushes full cart from Whole Foods and loads groceries in car; Edwards pushes empty cart to loading place; friend drives Edwards home; Edwards walks into house with clothes on hangers and bag limping slighting into house.  AR (E |

Abelson numerous times throughout 2003 and 2004 for these confidential psychotherapy
records.  AR (E 01186-01194).  On April 2, 2004, Mr. Abelson sent the psychotherapy records
with a warning that these records had no relation to her benefits claim.  AR (E 00707).  The
records revealed no psychiatric impairment, and thus no basis to terminate her claim.
Immediately after realizing it could not terminate benefits based on the policy's mental-
nervous limitation, Prudential ordered surveillance.  AR (E 00914-00915).

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

| Date | Surveillance Time | Video Time | Activities Observed |
|------|-------------------|------------|---------------------|
|      |                   |            | 00582-00585, 01227). |
| **TOTAL** | 51 hours, 35 min. | 56 min., 48 sec. | |

None of the activities captured on the surveillance video contradicted Edwards continued disability under the Plan.  Indeed, Prudential continued payment of benefits following the December 2004 surveillance, and Edwards had fully disclosed the fact that she volunteered at the hospital gift shop one day per week, something that Prudential's own IME physician, Dr. Becker, encouraged.  AR  (E 00766-00767).

### 2.    The Functional Capacity Evaluation

On April 13, 2006, Prudential required Edwards to undergo a Functional Capacity Evaluation.  AR (E 00377-00399).  The evaluation was conducted in a manner pre-designed to support a termination of benefits. At the beginning of the FCE, evaluator Bruce Kolman admitted to Edwards that he was instructed to "cut that part of the test" out that was designed to test her endurance for full-time work:

Kolman:    Okay, these are the directions that I've given to all folks that have this evaluation administered to them, and so I'm going to read this to you and then you'll ask me any questions that you want to and you understand it.

Edwards:    Okay.

Kolman:    You are going to be tested -- which will require you to use your strength, assume various positions, and perform repetitive movements.  In addition, I will briefly evaluate your balance and coordination.  ***I will ask you to repeat the first three tests at the end of the test to determine your endurance. Just as a side note, we won't be doing that part of it.  As they've asked me to cut that part out of the test.***  Um, the purpose of this test is to determine your safe limitations for performing work.

Edwards Decl., ¶ 2, Exhs. A (E 001587), B.  Kolman's thus admitted the FCE as conducted would not measure Edwards' endurance based on instructions from Prudential.  Amazingly, Kolman's written report fails to mention this fact.  To the contrary, it falsely specifies that the endurance tests were given.  And in fact, Edwards was never asked to perform those first three tests at the end to test her endurance.  Edwards Decl., ¶ 2.

Ignoring that the evaluation did not measure Edwards' endurance, Kolman somehow

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-9-

1    concluded that Edwards could "tolerate the Sedentary range of work . . . for the 8 hour day/40

2    hour work week." AR (E 00377). Kolman wrote that because of Edwards' "limited tolerances

3    for sitting, she would have to alternate between sitting, standing and walking to be able to

4    tolerate the Sedentary level of work for the 8-hour day/40 hour work week." *Id.* However, he

5    never specified how much of the day Edwards was capable of sitting, standing or walking.

6         Kolman's conclusions were contradicted by his own observations in the FCE report.

7    Kolman admitted that Edwards was a motivated client and was not engaging in any excessive

8    self-limiting behavior. AR (E 00377, 00383). During a five-minute keyboard trial, Kolman

9    reported that Edwards had to make 4 adjustments while sitting demonstrating moderate sitting

10   deviations of hip and knee flexion. AR (E 00383). Moreover, he noted that Edwards' standing

11   posture "exhibits increased hip, knee and ankle dorsiflexion. Client frequently moves around

12   when standing." She also reported pain during that test at the 8/10 level in the neck shoulder

13   and low back, and described her feeling as a "slowly tightening vise grip." *Id.* Yet, somehow

14   from this evidence, Kolman concluded that she would be able to keyboard on an occasional

15   basis, with some of her keyboarding standing up. *Id.*

16        Moreover, Kolman failed to mention that even during the truncated version of the FCE,

17   Edwards had to take a twenty-minute break to lie down in the middle of the examination

18   before she could continue because of the pain and numbness developing in her back and legs.

19   AR (E 00229 [Edwards Decl., ¶ 9]). After the exam, she had to lie down for 30 minutes before

20   her pain subsided enough for her to leave the building and be driven home. *Id.* After the exam

21   she had to lie down for two days in pain. AR (E 00229 [Edwards Decl., ¶ 10]).

22        Recognizing that Kolman's report could not support a termination of benefits,

23   Prudential sent him the surveillance footage on or around April 19, 2006 and directed him to

24   draft an addendum to this report. AR (E 01046). In his May 2, 2006 Addendum, Mr. Kolman

25   stated that he did not know the weight of the items she carried or the empty shopping cart she

26   pushed such that her activities were not necessarily inconsistent with his noted limitations.

27   AR. (E 00371-00372). Nevertheless, he claimed that Edwards did not demonstrate the same

28   pain behavior on the footage as she did in the FCE, even though he had admitted that Edwards

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-10-

1    had not demonstrated any signs of malingering in the FCE.  *Id.*

2            **3.    Edwards and Her Physicians Submit Convincing Proof of Her
                 Continued Disability That Prudential Ignored**

3

4            During Prudential's two-year campaign to terminate Edwards' benefits, Edwards and

5    her attending physicians continued to submit conclusive and consistent proof of her continuing

6    impairment due to chronic and disabling pain during that same two-year time span:

7    •   Edwards' Daily Activity Questionnaires dated November 17, 2004, December 15,
         2005 stated the medications she was taking for her chronic pain improved her pain
8        but that she was still limited in all aspects of life.  AR (E 00558-00556, 00636-
         00646).  Edwards stated she had to have the waistline of her pants altered so there
9        was no pressure on her lower back and waist.  She also stated that because of her
         chronic back pain, her driving is limited mostly to appointments and often her
10       friend had to assist her with driving.  She also reported that she hired a helper to
         perform the household tasks she could no longer perform.  AR (E 00630).  She
11       noted that she volunteered one day a week at Marin General hospital for a few
         hours on Sundays.  AR (E 00631).

12   •   Office visit notes dated January 15, 2004 to January 24, 2006, from Dr. Wayne
         Wolfe, M.D., Edwards' pain management specialist since October 2003.  AR (E
13       00413-00546).  In these notes, Dr. Wolfe detailed Edwards' pain levels and the
         limitations they imposed, as well the various medications prescribed to assist her in
14       coping with her chronic pain.  Kim Decl., ¶4, Exh. C (chronology of treatment).

15   •   Dr. Wolfe's April 2, 2005 report summarized Edwards' treatment history and
         opined that Edwards had unrealistic goals of resuming full activity and curing her
16       pain cause by Failed Back Surgery Syndrome.  AR (E 00455-00456).  He also
         stated that while she was working hard on her treatment, he continued to find her
17       totally and permanently disabled from her past and all work.

18   •   Dr. Wolfe's January 4, 2006 report stated that he has been caring for Edwards
         every one to four weeks since October 2003, and stated that Edwards was learning
19       to accept and live with the chronic pain resulting from Failed Back Surgery
         Syndrome.  AR (E 00419-00420).  Dr. Wolfe stated that while the medications
20       decreased her pain and allowed her to function at some level, she remained "totally
         and permanently disabled from all work."  AR (E 00420).

21   •   Dr. Wolfe's January 4, 2006 Attending Physician Statements stated that Edwards
         had limited range of motion, limited ability to stand, walk, lift and sit, and
22       restricted her from spending more than 20 minutes on any of these activities at a
         time.  AR (E 00554-00556).

23   •   Dr. Wolfe's January 5, 2006 Work Status Form, noted that his opinion was based
24       on Edwards' self-reports during office visits in addition to MRI findings and
         physical exam and testing her performed on her.  He restricted Edwards from
25       lifting, carrying, reaching or bending, and permitted only occasional squatting.  AR
         (E 00552-00553).  He limited her to 1-2 hours of sitting per day with rest breaks, 2-
26       3 hours a day of standing with rest breaks and one hour of walking with rest
         breaks.  AR (E 00552-00553).

27   •   A March 31, 2004 report from Dr. Light to Prudential described Edwards' office
28       visit.  AR (E 00594).  Edwards reported ongoing back pain with intermittent
         radiation into her legs and weakness in her legs.  *Id.*  He also found limited flexion

and extension of her back upon examination, and concluded that she continued to suffer from neurogenic pain, and was 100% disabled due the pain an weakness in her legs. *Id.*

- Dr. Light's July 7, 2004 office visit report to Prudential stated her condition "remained more or less unstable" and noted her reports of ongoing back pain with neurogenic symptoms and leg numbness when she sits for more than 5 minutes. AR (E 00593).

- Dr. Light's October 26, 2004 office visit report to Prudential stated that she has ongoing, severe and disabling pain in her back, and intermittent numbness and weakness in her legs when she sits more than 5 minutes. He stated that she remained disabled as a result of ongoing neuropathy, and that he did not forsee a change in her condition. AR (E 00592).

- Dr. Light's January 25, 2005 office visit report stated that her condition remained the same and that she had further numbness in the second toe on the left foot. AR (E 00591).

By the time Prudential terminated Edwards' benefits for a fourth and final time on July 28, 2006, Edwards claim file contained over 90 medical reports from her treating physicians recording the diagnosis and treatment of her disabling condition. *See* Kim Decl., Exhs. B, C, D (appendices of treatment reports from Dr. Light, Dr. Wolfe and other treatment providers).

### 4. The Medical Records Review by MES Solutions, Inc. and Dr. Bauer

On June 23, 2006, Prudential hired MES Solutions, Inc. to provide a medical records review. AR (E 01108-01109). MES in turn hired orthopedist R. David Bauer. Dr. Bauer never examined or even met Edwards, but his July 7, 2006 report was an exercise in personal hostility instead of an independent medical report. AR (E 00322-00329).

Dr. Bauer makes a series of unbelievable statements with no factual basis:

- <u>First</u>, although he admits that Edwards was functionally impaired as a result of her lumbar fusion surgeries and complications of pseudoarthrosis, he makes the unsupported statement, "[e]ven claimants with severe pain would be able to sit for approximately one hour in an uninterrupted fashion before needing to change position." AR (E 00327). Based on this unsubstantiated assertion, Dr. Bauer claimed that Edwards should be able to sit for 1 hour at a time for 8 hours, stand for 30-45 minutes." *Id.* Unlike Mr. Kolman, who admitted he could not determine how heavy the objects Edwards lifted during the surveillance video, Dr. Bauer stated without citing any evidence that Edwards she could lift 10-15 pounds. *Id.* By doing so, he ignored Edwards' inability to lift more than 4 lbs. at the FCE and her treating physicians' lifting restriction of 5 lbs. or less.

- <u>Second</u>, Dr. Bauer discounted Prudential's own FCE, claiming it was a minimal documentation of her abilities rather than an accurate representation of activities, because the surveillance supposedly showed her performing activities with no signs of discomfort. AR (E 00328).

- <u>Third</u>, he stated that the surveillance video demonstrated that she could perform

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

sedentary functions without pain, even though he does not specify how Edwards could demonstrate pain in the surveillance video to satisfy Dr. Bauer.  AR (E 00328).

- <u>Finally</u>, he claimed that Edwards' functional complaints were not as severe as she claimed nor were they solely physical in nature, claiming "[h]er emotional outlook strongly influences her disability beliefs, and her physicians help her "buy into" the disabled role."  AR (E 00328).  Not only is this statement insulting to Edwards' physicians, it also has no basis in fact.

Dr. Bauer is a recidivist when it comes to rendering biased reports in favor of disability insurers. In a recent ERISA case, the court noted the high number of medical reviews performed by MES Solutions for Prudential and other insurance companies, and held that the insurer abused its discretion by denying benefits, based in part on Dr. Bauer's conclusory opinion that the claimant was not disabled under an own occupation policy because he believed the claimant could work a sedentary occupation.  *Garrison v. Aetna Life Ins. Co.*, 558 F. Supp. 2d 995, 1002 fn. 6 (C.D. Cal. 2008).

On July 25, 2006, Prudential terminated Edwards' benefits for the fourth and final time. AR (E 01092-01096).  At no point did Prudential ever engage in any vocational analysis, even though the Plan's definition of total disability required Prudential to account for Edwards' education, training and experience.  *Id.* (E 00011).

**E.    Edwards Appeals With Comprehensive Evidence of Her Disability and Inability to Perform Any Occupation, Which Prudential Ignores**

On March 5, 2007, Edwards submitted her appeal through her counsel, Pillsbury & Levinson LLP.  AR (E 00217-00225).  The appeal contained the following documents to support her claim:

- A declaration from Edwards described her debilitating condition that causes pain to her lower back and numbness and weakness down her legs, as well as flare-ups down her legs.  AR (E 00226-00233).  She also stated that because of her condition, the most she could volunteer at the hospital gift shop was one shift per week for 3-4 hours, and that she needed assistance to stock merchandise, move carts or display units or do lifting.  AR (E 00232).
- A declaration from Edwards' friend Abigail Walsh stated that because of her condition, Edwards now has to use assistance from Walsh and others with household tasks, shopping, and driving for appointments.  Walsh also noted that Edwards' condition has reduced her ability to have a social life because of the strain that driving puts on her condition, and that even watching movies is difficult because she could not remain seated in a movie seat without pain.  AR (E 00234-E 00239).

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

- A September 6, 2006 EMG/Nerve Conduction Study report found evidence of a chronic S1 lumbosacral radiculopathy with mild chronic denervation, electrodiagnostic evidence of a mild chronic L4/5 lumbar radiculopathy without denervation, and electronic diagnostic evidence of a left L3 lumbar radiculopathy with denveration. AR (E 00213-00216).

- A declaration from Dr. Wolfe stated that Edwards has chronic pain that is mixed nociceptive NMDA mediated CNS wind-up pain and neuropathic pain that is typical of Failed Back Surgery Syndrome. He stated that while she has regained some function through counseling and pain management, it remained limited. He also commented that Edwards performed the volunteer work even though the short shift aggravated her condition and caused her to lose activity and function. AR (E 00240-00244).

- An affidavit from her dentist, Clayton Joseph Perry, D.D.S., which recounts her difficulty sitting through simple medical appointments because of her pain. AR (E 00245-00247).

- An affidavit from her podiatrist Dr. Jeffrey Thomas Amen, D.P.M. stating that Edwards was unable to sit for more than five minutes before positioning herself when she came for appointments. AR (E 00248-00249).

On March 6, 2007, Edwards' counsel faxed an affidavit from Dr. Light stating that Edwards continued to suffer from ongoing neurogenic and neuropathic pain, with lost neurologic function, and intermittent numbness and weakness in her legs. AR (E 00251-00254). Dr. Light stated that Dr. Bauer never spoke to him about Edwards' condition, even though he is one of her treating doctors. He also stated that the medication that Edwards had to take to control her pain, limited her ability to concentrate and her memory and prevented Edwards from being fully functional in a full-time position.

On March 23, 2007, Edwards submitted a comprehensive vocational evaluation from vocational expert Betty Kohlenberg. AR (E 00173-00184). Ms. Kohlenberg met with Edwards personally for 2 ½ hours and observed that Edwards was unable to sit in the client chair for more than 10-15 minutes at a time, having to stand and move around the office repeatedly because of the pain. AR (E 00182). Ms. Kohlenberg confirmed Edwards was not qualified for sedentary occupations (as defined by the Department of Labor and the Social Security Administration) within her training and experience, all of which would place demands of production, speed, consistent work pace and attendance that she could not tolerate. AR (E 00182-00183). Ms. Kohlenberg noted that Prudential's conclusion that she could work a 40-hour week was not confirmed by any physician, physical therapist or vocational counselor who

1    actually met her in person.  AR (E 00183).

2         On May 16, 2007, Edwards submitted an additional declaration from Dr. Wolfe (AR (E

3    00116-00120)) stating that while his office notes stated Edwards had made improvements in

4    her condition, at all times she remained permanently disabled but was learning to live with her

5    pain and the significant limits on her functionality.  Edwards also submitted additional medical

6    records confirming her continued disability (AR *(E 00121-00169)), including:

7      • A March 29, 2006 office visit letter from Dr. Light stating that Edwards had a
         current lifting restriction of 4 lbs. and a restriction against bending.  AR (E 00169).

8      • An August 3, 2006 office visit letter from Dr. Light noting that Edwards had
9        ongoing neurogenic pain in her back, cramping, spasms of back muscles and pain
         in her legs.  Dr. Light stated Edwards had chronic neurogenic pain syndrome, and
10       that her symptoms were consistent.  He also suggested an EMG to determine if
         abnormalities consistent with neurogenic pain syndrome existed.  AR (E 00168).

11     • A September 6, 2006 office visit letter from Dr. Light stating that the August 3,
12       2006 EMG/NCS showed bilateral L4, L5 and S1 radiculopahy with some degree of
         abnormality at the L3 level, and concluding that she suffers from ongoing
13       neurogenic pain.  AR (E 00167).

     • A December 20, 2006 office visit letter from Dr. Light noting that Edwards'
14     ongoing severe pain in her back radiating into her legs continued.  AR (E 00166).

15     • A February 22, 2007 office visit letter from Dr. Light stating that Prudential's
16       surveillance in no way contradicted Edwards' continued disability.  He noted that
         activities of limited filing, kneeling down on both knees, lifting a stuffed animal, or
17       pushing an empty grocery cart did not disprove ongoing neurogenic pain, as
         patients with the most severe disabilities are able to participate in those activities to
         a limited extent.  AR (E 00165).

18     • Office visit notes from March 30, 2006 to May 10, 2007, from Dr. Wolfe, that
19       chronicled Edwards' chronic pain from her condition and the medications used to
         manage her condition.  AR (E 00121-00164).  On December 5, 2006, Dr. Wolfe
20       noted Edwards' report that her volunteer work flared her pain and limited her
         activity for the following few days.  He diagnosed her with mixed nociceptive and
         neuropathic chronic pain.  AR (E 00151-00153).

21         In response to all of this, Prudential hired MLS National Medical Legal Services, Inc.

22   to find a doctor to conduct another records review.  AR (E 01074-01075).  MLS chose

23   Physical Medicine and Rehabilitation physician Jack Denver, M.D., who on June 11, 2007

24   issued a records review report.  AR (E 00049-00058).  Like Dr. Bauer before him, Dr. Denver

25   never met or examined Edwards.  Dr. Denver completely ignored the September 9, 2006 EMG

26   showing chronic radiculopathy, claiming that the raw data did not meet the AANEM criteria

27   without explaining what criteria were not met.  AR (E 00054).  He thus ignored the diagnoses

28   of radiculopathy and nerve pain.  Dr. Denver also completely disregarded the consistent

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-15-

reports of chronic pain by Edwards and her physicians, including Dr. Wolfe.  AR (E 00055-00056).  Dr. Denver admitted that Edwards would have limited range of motion, but claimed that the surveillance was not consistent with the medical documentation, and claimed she was capable of performing a more active lifestyle "which could include full-time work activities with the above noted restrictions."  AR (E 00056-00057).

On July 6, 2007, Dr. Denver issued an Addendum following telephone conversations with Edwards' treating physicians, Dr. Light and Dr. Wolfe.  AR (E 00039-00041).  Both Dr. Light and Dr. Wolfe strenuously supported Edwards' continued disability. *Id.* Nonetheless, Dr. Denver issued another August 24, 2007 Addendum in which he brushed aside Dr. Light and Dr. Wolfe's opinions without engaging in any meaningful analysis.  *Id.* (E 00029-00031).  Incredibly, Dr. Denver somehow claimed that Edwards "has the capacity for ***unrestricted sitting***", claiming that the Edwards' limited tolerance for sitting due to pain demonstrated in the FCE was "not an objective measurement, but its more a judgment of what the claimant can tolerate . . . . The inability to sustain sitting is more of a tolerance issue rather than a capacity issue."  *Id.* (emphasis added).

On September 6, 2007, Prudential sent its final denial letter, essentially repeating the assertions made in Dr. Denver's report and Addenda.  AR (E 01078-001081).  Again, Prudential made no attempt at vocational analysis, instead asserting that she could perform a some unspecified "sedentary" occupation full-time.

**F.    The Social Security's Determination That Edwards Remains Totally Disabled from Any Occupation**

The Plan requires claimants to pursue Social Security disability benefits, the receipt of which offsets the amount of benefits Prudential must pay.  AR (E 00007-00009).  Accordingly, Edwards was forced to apply for Social Security disability benefits. On November 10, 2000, the Social Security Administration found her disabled as of December 28, 1998.  AR (E 01343-01345).  Edwards was thus required to reimburse Prudential $22,650.00, representing an overpayment of benefits due to the Social Security offset.  AR (E 01337-01340).

In contrast with Prudential's campaign to find a way to terminate benefits, the Social

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1  Security Administration has continued to find Edwards disabled and she continues to receive

2  Social Security disability benefits to this day. Edwards Decl., ¶2.

3  **IV.    ARGUMENT**

4      **A.    *De Novo* Review Applies In This Case**

5          By stipulation, this Court has ordered that the standard of review in this case is *de novo*.

6  *See* Stipulation and Order Regarding Standard of Review (June 23, 2008, Docket No. 45).  For

7  *de novo* review, the court's task is simply to determine whether the plan administrator's

8  decision to deny benefits was right or wrong.  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d

9  955, 963 (9th Cir. 2006).  Unlike cases where abuse of discretion is the standard of review, for

10  *de novo* review the court does not give the administrator's decision any deference.  Instead,

11  ERISA requires the court to exercise independent judgment after carefully reviewing the

12  administrator's decision. *See Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d

13  727, 733 (9th Cir. 2006) (*citing Mongeluzo v. Travenol Long Term Disability Benefit Plan*, 46

14  F.3d 938, 943 (9th Cir. 1994)).  The court has discretion to allow evidence not submitted to the

15  plan administrator, when such evidence is necessary to conduct an "adequate *de novo* review

16  of the benefit decision." *Id.*

17      **B.    Edwards' Records Consistently Demonstrate Her Total Disability To Be
           Employed At Any Occupation**

18

19          Whatever evidence Prudential has presented, it is more than outweighed by the

20  consistent evidence from Edwards and her treating physicians that her condition has remained

21  disabling before and after Prudential's wrongful denial.  The Ninth Circuit has held that on *de*

22  *novo* review, a court can recognize that a treating physician has a greater opportunity to know

23  and observe the patient than a physician hired by the plan administrator, especially when the

24  plan administrator's physician never examined the patient.  *See Jebian v. Hewlett-Packard Co.*

25  *Emp. Benefits Org. Inc. Protection*, 349 F.3d 1098, 1109 fn. 8 (9th Cir. 2003).

26          Dr. Light has treated Edwards since 1998 and since that time has submitted reports and

27  office visit notes to Prudential confirming Edwards' chronic pain, numbness and flares in her

28  lower back and legs, as well as how she experiences them when she has to sit for more than a

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PLAINTIFF'S MOTION FOR JUDGMENT                                    Case No. 3:07-CV-5807 (VRW)

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1  few minutes.  Kim Decl., Exh. B.  Similarly, Dr. Wolfe has served as Edwards' pain

2  management physician since 2003, and has detailed Edwards' persistent attempts to manage

3  her chronic and disabling pain with medication.   Kim Decl., Exh. C.  These two physicians

4  alone have treated her *over 80 times* during the course of her disability and have consistently

5  reported their findings to Prudential.  *See* Kim Decl., Exhs. B, C.  In contrast, Dr. Bauer and

6  Dr. Denver have never *met* Edwards, let alone examined her.

7       Moreover, Edwards presented eyewitness evidence from her friend, her dentist and her

8  physicians all confirming what she has reported all along:  that she lives with chronic pain in

9  her lower back and a nerve condition that causes numbness and weakness down both of her

10  legs, that sitting for more than a few minutes exacerbates that pain and prevents her from doing

11  any sitting for an extended period without paying the consequences, and that as a result her

12  ability to do even daily activities is limited.  None of these observations are refuted by the

13  FCE, the surveillance or Prudential's paper reviewers; Prudential's failure to even consider this

14  probative evidence warrants the reinstatement of her benefits.  *See, e.g., Rekstad v. U.S.*

15  *Bancorp*, 451 F.3d 1114 (10th Cir. 2006) (ERISA plan abused discretion by failing to consider

16  third party affidavits); *Merrill v. Apfel*, 224 F.3d 1083 (9th Cir. 2000) (in Social Security

17  disability case, failure to consider testimony of family and friend regarding the claimant's

18  condition violated substantial evidence rule.)

19       Finally, Edwards submitted a mountain of objective evidence of her condition,

20  including the 2006 EMG.  AR (E 00213-00216).  This, if nothing else, should have put to rest

21  Dr. Bauer's scurrilous remarks that Edwards had no basis for the pain that she was

22  experiencing and that her physicians were "buying into" her pain.  In short, Edwards has

23  presented such overwhelming evidence that even if a court accepted Prudential's evidence as

24  valid, Edwards would have a preponderance of the evidence under the *de novo* standard.  Yet

25  as discussed below, the evidence relied upon by Prudential has no merit.

26      **C.**    **The FCE Was Fatally Flawed and Cannot Serve As the Basis for**
          **Terminating Edwards' Benefits**

27

28       As discussed above, Mr. Kolman admitted that he was instructed to "cut that part of the

1    test" measuring Edwards' endurance for full-time work.  Edwards Decl., ¶ 4, Exhs. A, B.

2    Based on that admission alone, the FCE has no value whatsoever in determining if Edwards

3    may perform a full-time position.  *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d

4    356, 359-60 (6th Cir. 2003)(ruling that plan abused its discretion by relying solely on a flawed

5    FCE  to deny benefits).  Kolman's admission and his observations during the FCE are simply

6    inconsistent with his conclusion that Edwards could perform a full-time sedentary job.

7    Because the FCE report's conclusion lacks a factual basis, it cannot support a termination of

8    her benefits.

9        **D.    The Surveillance Does Not Provide Any Evidence Edwards Can Work At**
         **Any Occupation And Actually Supports Edwards' Continued Disability**

10

11        It is clear from the Addendum to Kolman's FCE report and the reports from Dr. Bauer

12    and Dr. Denver that Prudential's sole support for its denial is the isolated moments caught on

13    the surveillance video.  Courts have held that relying on surveillance footage showing a

14    claimant engaged in activities significantly less taxing than working is an abuse of discretion,

15    when all of the other evidence from treating physicians and therapists confirms the plaintiff's

16    total disability. *See Grosz-Salomon v. Paul Revere Life Ins. Co.*, 1999 WL 33244979 (C.D.

17    Cal. Feb. 4, 1999) *aff'd* 237 F.3d 1154 (9th Cir. 2001); *Finley v. Hartford Life and Acc. Ins.*

18    *Co.*, 2007 WL 4374417, *9 (N.D. Cal. Dec. 14, 2007) (video surveillance insufficient to show

19    "Plaintiff is capable of enduring the physical demands of full-time work, even in a sedentary

20    position, [as] the video depicts only a few scattered bursts of activity"; *King v. Cigna Corp.*,

21    2007 WL 2288117, *11 (N.D. Cal. Aug. 7, 2007) (surveillance video does "not establish that

22    [plaintiff] is able to work an eight-hour-a-day job, especially one that requires her to spend

23    most of her day sitting . . . flares of pain are quite detrimental to one's focus and ability to

24    perform cognitive tasks").

25        The activities Edwards performed in the surveillance videos for less than a hour over

26    six days of surveillance cannot demonstrate the ability to work a full-time job on a continual

27    basis.  Mr. Kolman actually admitted that there was no way to determine if the objects lifted or

28    pushed by Edwards in the video actually exceeded her limitations.  A look at the video from

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-19-

1   August 21, 2005 will show that Edwards pushed an empty cart, lifted a small stuffed animal

2   puppy in the gift shop, and engaged limited bending to find a CD.  AR (PRUE 01227).  Dr.

3   Light quite rightly stated that even disabled individuals could engage in such limited activities

4   in isolated circumstances.   AR (E 00165).

5           Moreover, what the video shows, and which only the investigator admits, is that

6   Edwards pays a price for every shift that she volunteers for.  The video shows that after her

7   shift, Edwards limps with noticeable pain, even though she avoids sitting during her volunteer

8   shift.  It also shows the difficulty Edwards experiences even loading herself into a car, having

9   to lift one leg at a time with her hands.  The failure of Kolman, Dr. Bauer and Dr. Denver to

10  comment on this is puzzling, given that Edwards clearly was in a debilitated state after a mere

11  three-hour shift.  The video shows there simply is no way she could perform an eight-hour

12  shift with significant sitting.

13          That Edwards performs limited volunteer work in an attempt to give her life some

14  meaning despite her disabled status has no bearing on whether she remains disabled.  *See*

15  *Thiverge v. Hartford Life and Acc. Ins. Co.*, 2006 WL 823751 at *11-12 (N.D. Cal. 2007)

16  (running for local school board does not prove ability to work without restrictions at a

17  sedentary level on a full time basis, nor does video surveillance of plaintiff walking, driving

18  and doing errands for a couple of hours on 5 of 6 days).  She and her doctors have revealed for

19  years that she does the volunteer work for limited shifts (no more than 3-4 hours, once a week,

20  with no sitting involved) with limited responsibilities, and that each shift results in increased

21  pain and impairment for Edwards.  For Prudential to imply Edwards is somehow a malingerer

22  when it is apparent that she is trying to be as functional as possible given her condition and

23  with the support of her doctors, simply does not withstand scrutiny.

24          Thus, while Edwards objects to Prudential's use of surveillance video and its reliance

25  on that video to justify terminating benefits, that video should make clear to any fact finder

26  that this is a woman who is completely disabled from performing any sedentary job full-time.

27  ///

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-20-

E.    **Dr. Bauer and Dr. Denver's Reports Should Be Disregarded**

1.    **The Refusal to Credit Edwards' and Her Physicians' Reports of Chronic Pain And The Impairment It Causes Was Arbitrary**

Throughout Dr. Bauer's and Dr. Denver's reviews, they discount Edwards' consistent reports of chronic pain over the past four years.  It is clear that their refusal to credit these reports as communicated to her doctors, was in error.  In *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872-873 (9th Cir. 2008) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) (per curiam)) the Ninth Circuit made clear that individual reactions to pain are subjective and cannot be determined through objective measurements.  *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) ("[P]ain is a completely subjective phenomenon" and "cannot be objectively verified or measured"); *Carridine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).  *See also Sabatino v. Liberty Life Assur. Co. of Boston*, 286 F. Supp. 2d 1222 (N.D. Cal. 2003) (finding the administrator's medical opinion was suspect because it ignored the primary bases for the disability claim, the severe and chronic pain and the cognitive impairments caused by the pain medication used to manage the pain).  As a result, it would be clear error to value the opinions of paper reviewers like Dr. Bauer and Dr. Denver over Edwards' longstanding treating physicians Dr. Light and Dr. Wolfe, who have repeatedly examined her and are familiar with her medical history.

Moreover, Dr. Bauer and Dr. Denver's unfounded skepticism about the source of Edwards' pain is moot, when the 2006 EMG is considered.  That EMG makes clear that Edwards has bilateral radiculopathy in her lower lumbar region.  The doctors' refusal to credit the reports of pain would be a reason to find an abuse of discretion; here in a *de novo* case, it merely demonstrates how little evidence Prudential has in support of its termination.

2.    **Prudential's Failure to Conduct Any Vocational Analysis Warrants Reversal of the Termination**

Prudential concluded that Edwards could perform a full-time sedentary position without conducting any vocational analysis.  Courts have held that an insurer's failure to determine if a claimant is vocationally capable of performing an occupation requires reversing

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    a termination of benefits, especially when the policy requires the insurer to take into account

2    the claimants' "education, training and experience." *See Demirovic v. Building Service 32 B-J*

3    *Pension Fund*, 467 F.3d 208, 215 (2nd Cir. 2006) (stating plan administrator must determine if

4    a claimant is vocationally capable of performing an occupation as well as physically capable);

5    *Poulos v. Motorola Long Term Disability Plan*, 93 F.Supp.2d 926, 932 (N.D. Ill 2000).

6    Edwards is 60 years old and has been out of the work force for over nine years, yet Prudential

7    never thought to perform a vocational analysis to see if she could return to the hypothetical

8    sedentary job it claims she can do full-time.  It failed to even specify how it defined such a

9    position.

10    In her comprehensive vocational report (and the only vocational analysis in the

11    Administrative Record), Betty Kohlenberg cited the definition of Sedentary work by the

12    Department of Labor, which stated that sedentary work required "sitting most of the time", and

13    cited that commission-based jobs like the one Edwards performed pre-disability required a

14    high rate of production that required the worker to be remain in certain postures for a certain

15    length of time.  AR (E 00180-00181); *see also* Social Security Ruling 96-9p, 1996 SSR LEXIS

16    6 (C.E. 1996) (defining Sedentary work as requiring "generally … 6 hours of an 8-hour

17    workday*")*.  Based on her observation that Edwards could not sit for more than 10-15 minutes

18    at a time during Ms. Kohlenberg's 2 ½ hour interview without pain, Kohlenberg correctly

19    noted there was no way Edwards could stay in one position for a prolonged period of time, and

20    could not meet the production demands of a sedentary position in a professional capacity.

21    Prudential's failure to conduct any vocational analysis becomes obvious in light of the

22    progressively unfounded assertions of Mr. Kolman, Dr. Bauer and Dr. Denver, none of whom

23    have any vocational expertise whatsoever. Kolman claimed that Edwards could work a 40-

24    hour shift in a sedentary job, but would not state how much sitting or standing she could

25    endure to perform that imaginary job.  AR (E00377).  Dr. Bauer makes the blanket statement

26    that "*even claimants were severe pain would be able to sit approximately one hour in an*

27    *uninterrupted fashion before needing to change position*", without ever observing Edwards or

28    crediting any of the reports by Edwards's physicians that Edwards' ability to sit was

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-22-

1    significantly limited.  AR (E 00327).  Finally, Dr. Denver's distinction between Edwards'

2    "tolerance" for sitting versus her "capacity" to do so makes no sense at all.  AR (E 00030).

3    How could she perform a sedentary job if she lacks the "tolerance" to sit for prolonged periods

4    of time?  These inconsistent and unfounded assertions merely highlight that Prudential's

5    suggestion Edwards could perform a sedentary occupation is without basis.

6         **F.    Prudential's Refusal to Credit Social Security's Determination That
               Edwards Was Totally Disabled From Any Occupation Warrants Reversal
7               of the Termination**

8         Moreover, Prudential's refusal to even consider the Social Security

9    Administration's finding justifies overturning Prudential's termination of benefits.  The

10   Supreme Court recently made clear that courts should question an insurer's refusal to

11   credit the Social Security Administration's finding that a claimant was disabled, when it

12   encouraged the claimant to apply for Social Security benefits, but then ignored Social

13   Security's determination that the claimant was totally disabled.  *See Glenn*, __ U.S. __,

14   128 S.Ct. at 2352.  Here, the Court should view Prudential's refusal to credit the Social

15   Security determination with deep scrutiny, given that Prudential *required* Edwards to

16   apply for Social Security disability benefits and then offset the Social Security award

17   against the amount it paid her in long-term disability benefits.

18        **G.    The Preponderance of the Evidence Shows That Edwards Prevails on Her
               Breach of Fiduciary Duty Claim**
19

20        As set forth above, *Glenn* makes clear that insurers administering ERISA plans

21   engaging in claims processing have a fiduciary duty to act "solely in the interests of the

22   participants and beneficiaries of the plan." *Glenn*, 128 S. Ct. at 1250 (citing 29 U.S.C. §

23   1104(a)); *see also Caplan v. CNA Short Term Disability Plan*, 479 F. Supp. 2d 1108, 1112

24   (N.D. Cal. 2007) (claims decisions are fiduciary acts because they involve the core of plan

25   administration).  In *Patelco Credit Union v. Sahni,* 262 F.3d 897 (9th Cir. 2001), the Ninth

26   Circuit found that a fiduciary third-party administrator of an employer's self-funded health

27   plan had engaged in self-dealing by assessing an administrative service fee that was hidden in

28   the amounts he charged the plan to pay medical providers and cover insurance premiums.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    Here, the evidence of self-dealing is even more evident than in *Patelco*.  Prudential's

2    records of terminating Edwards' benefits *four times* over *seven years*, and the circumstances of

3    the final termination of benefits, constitutes a failure to provide reasonable claims procedures

4    and a breach of the fiduciary duty of loyalty owed by Prudential.  Moreover, even if Edwards

5    succeeds on her benefits claim, she will only recover past-due benefits, interest, attorney's fees

6    for this litigation and will be put back on claim.  She will never see the attorney's fees she

7    spent to reverse the previous three frivolous terminations of benefits, she will still be subject to

8    Prudential's unrelenting review of her claim, and will face the ongoing risk of losing her

9    benefits unlawfully on the basis of a biased review.  Given Prudential's previous claims

10   administration history, the ongoing peril of losing her benefits unfairly again in the future is a

11   very real prospect.  Prudential has shown time after time that it will favor its own interest at the

12   expense of its participant Edwards, with no regard for its fiduciary duty to her.

13   ERISA section 502(a)(3) allows a claimant to seek "(A) to enjoin any act or practice

14   which violates any provision of this title or the terms of the plan, or (B) to obtain other

15   appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of

16   [ERISA Title I, including the fiduciary duties described above] or the terms of the plan." 29

17   U.S.C. § 1132(a)(3).  In *Donovan v. Mazzola,* 716 F.2d 1226, 1238-39 (9th Cir. 1983) the Ninth

18   Circuit approved the removal of fiduciaries of a pension plan because they engaged in a

19   prohibited transaction, and held that a court may remove fiduciaries for imprudent conduct,

20   divided loyalties and prohibited transactions.  S*ee also Shaver v. Operating Eng'rs Local 428*

21   *Pension Trust Fund*, 332 F.3d 1198, 1203 (9th Cir. 2003).

22   Either Prudential should be ordered to continue payment of benefits through the

23   maximum benefit period (to age 66) or it should be removed as fiduciary.  AR (E 00006).

24   Edwards' requested relief falls within the scope authorized by section 502(a)(3), as

25   Prudential's removal as plan fiduciary would "redress such violations" because an unbiased

26   administrator would make fiduciary decisions for the next five years.  The relief available on

27   Edwards' benefits claim is not adequate to remedy the injuries described above.  The interests

28   that the equitable relief claim address – the integrity of the ERISA appeals process itself and

-24-

1    the in the integrity of the fiduciary-participant relationship – is separate from the interest the

2    benefits claim address, which seek the reinstatement of benefits.

3         *Rawls v. Unum Life Ins. Co. of Am.*, 219 F. Supp. 2d 1063, 1066 (C.D. Cal. 2002). is

4    directly applicable to this case.  In *Rawls*, the court granted the plaintiff's injunction to require

5    Unum to re-open the appeals of individuals whose claims UNUM denied on an allegedly

6    illegal basis.  The court noted that a claimant's subsequent civil action would be

7    "compromised" by the insurer's failure to provide a reasonable claims procedure because the

8    administrative record was one-sided.  Here, Edwards was compromised by Prudential's biased

9    practices and history of bad faith terminations of her benefits.  Because the relief available

10   from the benefits claim is not adequate to protect the interests addressed by her equitable relief

11   claim, equitable relief is appropriate. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996)

12   **V.    CONCLUSION**

13        For all the reasons stated above, Edwards respectfully requests that the Court:  1) order

14   that she is entitled to benefits under the terms of the Plan from July 25, 2006 to the present; 2)

15   declare that Prudential's series of termination of benefits without good cause was a breach of

16   its fiduciary duty of loyalty to Edwards; and 3) either order benefits to be paid monthly

17   through the Plan's maximum benefit period or remove Prudential as fiduciary of the Plan on

18   Plaintiff's claim for benefits.

19   Dated:  September 11, 2008              PILLSBURY & LEVINSON, LLP

20

21                              By:    ____/s/ Terrence J. Coleman____
                                        Terrence J. Coleman
22                                      Brian H. Kim
                                        Attorneys for Plaintiff
23                                      ELIZABETH E. EDWARDS

24

25

26

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-25-